UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| FiberMark, Inc., | ) | Case No. 04-10463 cab |
| FiberMark North America, Inc., and | ) | *Chapter 11* |
| FiberMark International Holdings LLC, | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |

---

**ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION
UNDER CHAPTER 11, TITLE 11, UNITED STATES CODE
OF FIBERMARK, INC., ET AL., DEBTORS**

---

A HEARING HAVING BEEN HELD BEFORE THE COURT on December 2, 2005 (the "Confirmation Hearing"), to consider confirmation of the Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc., et al., Debtors, dated November 1, 2005 (the "Plan"),[1] proposed by FiberMark, Inc. and its subsidiaries in the above-captioned jointly administered cases (the "Debtors" or the "Reorganized Debtors," depending on the context);

IT FURTHER APPEARING TO THE COURT that the Disclosure Statement with Respect to Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc., et al., dated November 1, 2005 (the "Disclosure Statement") has been previously approved by the Court, pursuant to the Order Approving Disclosure Statement with Respect to Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc., et al., Debtors, dated October 27, 2005 (the "Disclosure Statement Order");

---

[1]    Capitalized terms used herein without definition have the meanings provided for in the Plan.  In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

IT FURTHER APPEARING TO THE COURT that solicitation and noticing procedures with respect to the Plan have been approved by the Court, pursuant to the Order in Connection with Amended Plan of Reorganization (I) Determining Dates, Procedures and Forms Applicable to Solicitation Process, (II) Establishing Vote Tabulation Procedures, (III) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Amended Plan, (IV) Extending VT. LBR 3007-1(c) Deadline for Filing Claims Objections, and (V) Extending VT. LBR 3020-1(b) Deadline for Filing Motion for Cram Down, dated October 27, 2005 (the "Solicitation Order");

IT FURTHER APPEARING TO THE COURT that the deadline for filing objections to the Plan has passed and that, other than the objection of the U.S. Trustee relating to the filing of monthly statements and payment of quarterly fees, no objections to confirmation of the Plan were filed;

IT FURTHER APPEARING TO THE COURT that the deadline for casting ballots to accept or reject the Plan has passed and that Logan & Company, Inc. acting as voting agent pursuant to the Solicitation Order has filed herein the Declaration of Kathleen M. Logan Certifying Voting on and Tabulation of Ballots Accepting or Rejecting the Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc., et al., Debtors (the "Logan Declaration");

IT FURTHER APPEARING TO THE COURT that the Debtors have presented testimony, evidence and argument of counsel in support of confirmation of the Plan, and that additional testimony, evidence or argument of counsel has been presented by other parties in interest;

NOW, THEREFORE, based upon the Court's review of (a) the Disclosure Statement, (b) the Plan, (c) any unresolved objections to confirmation of the Plan, (d) all of the

2

evidence proffered or adduced at, filings in connection with, and arguments of counsel made at, the Confirmation Hearing, and (e) the entire record of these chapter 11 cases; and after due deliberation thereon and good cause appearing therefor, and for the reasons set forth on the record at the Confirmation Hearing,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    *Jurisdiction; Venue; Core Proceeding*.  The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) over which the Court has exclusive jurisdiction.

B.    *Judicial Notice*.  The Court takes judicial notice of the docket of the Debtors' chapter 11 cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed with, all orders entered by, and all evidence and argument made, proffered or adduced at the hearings held before the Court during the pendency of the chapter 11 cases.

C.    *Transmittal and Mailing of Solicitation Materials and Notices*.  The solicitation materials and notices prescribed by the Solicitation Order were served in compliance with the Solicitation Order, and such service was adequate and sufficient.  Supplemental notice of the Confirmation Hearing was provided by publication as required by the Solicitation Order. Adequate and sufficient notice of the Confirmation Hearing and the other deadlines and matters required to be noticed pursuant to the Solicitation Order was given in compliance with the Bankruptcy Rules and the Solicitation Order, and no other or further notice is or shall be required.

---

[2]    Pursuant to Fed. R. Bankr. P. 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

D.        *Adequacy of Solicitation Procedures*.  All procedures used to distribute the

solicitation materials to the appropriate creditors entitled to vote on the Plan and to tabulate the

ballots returned by creditors were fair and were conducted in accordance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Order.  Votes for

acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal

of a disclosure statement containing adequate information, and otherwise in compliance with 11

U.S.C. §§ 1125 and 1126 and Fed. R. Bankr. P. 3017 and 3018.

E.        *Good Faith Solicitation -- 11 U.S.C. § 1125(e)*.  Based on the record before

the Court in these chapter 11 cases, the Debtors, the Reorganized Debtors and their respective

subsidiaries, GECC, the Indenture Trustee, Silver Point, AIGGIC, Post, and Solutions

Dispersions, Inc., and their respective present or former members, officers, directors, employees,

advisors, Professionals, and agents have acted in good faith within the meaning of 11 U.S.C. §§

1125(e) and 1129(a)(3), and in compliance with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules and the Solicitation Order in connection with all of their respective activities

relating to the solicitation of acceptances of the Plan and their participation in the activities

described in 11 U.S.C. § 1125 (including letters of support in favor of the Plan), and are entitled to

the protections afforded by 11 U.S.C. § 1125(e) and, to the extent applicable, the exculpation and

injunctive provisions set forth in Section 12.12 of the Plan.

F.        *Impaired Classes that have Voted to Accept or Reject the Plan*.  Classes 4,

5, 6, 7, 8, 9 and 10 are each impaired and, as evidenced by the Logan Declaration, which certified

both the method and results of the voting, have voted to accept the Plan pursuant to the

requirements of 11 U.S.C. §§ 1124 and 1126.  Thus, at least one impaired Class of Claims has

voted to accept the Plan.

4

G.      *Classes Deemed to have Accepted or Rejected the Plan*.  Classes 1, 2, 3 and 14 are not impaired under the Plan and are deemed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f).  Classes 11, 12, 13 and 15 will receive no distribution under the Plan and are deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).

H.      *Substantive Consolidation of Debtors' Estates*.  The Plan provides for substantive consolidation of the Debtors' estates for purposes of distribution only, to which no party in interest has objected.  Substantive consolidation is appropriate because, among other things, the various business segments of the Debtors operate as integrated units; FiberMark owns 100% of the stock of the Subsidiary Debtors; the Debtors have common officers and directors; the Board of Directors of FiberMark oversees the Debtors' management, reviews their long-term strategic plans, and exercises decision-making authority in key areas; corporate policy is created and executed for all of the Debtors at the direction of FiberMark's management; the Debtors employ a fully-integrated, centralized cash management system; FiberMark and the Subsidiary Debtors are obligors or guarantors under the pre-petition senior secured credit facility; FiberMark is the obligor under the FiberMark Notes, which are guaranteed by the Subsidiary Debtors; consolidated books and records are maintained by FiberMark and its subsidiaries; and because the Debtors do business under the name "FiberMark" and historically have often failed to use legal entity names in their dealings with customers and vendors, creditors have treated the Debtors as a single economic unit.  Moreover, substantive consolidation will benefit all parties in interest by simplifying the administration of the Debtors' estates and, thus, avoiding unnecessary costs and expenses.  Based upon the facts and circumstances of these cases, it appears that substantive consolidation is necessary to a successful reorganization, is in the best interest of the Debtors, their estates and creditors, and is fair and equitable.

5

I.    _Debtor Releases, Voluntary Creditor Releases and Exculpations_.  The releases proposed to be made by the Debtors in favor of third parties pursuant to Section 12.9(a) of the Plan are appropriate and should be approved.  The proposed released parties have made a substantial contribution to the Debtors' reorganization, the releases are necessary to the success of the Debtors' rehabilitation under the Plan, and the Plan has been accepted by substantial majorities in all of the voting classes.  The voluntary creditor releases provided for in Section 12.9(b) of the Plan are appropriate and should be approved.  Such releases were fully disclosed and are consensual agreements by creditors who voted to accept the Plan.  As to the releases in favor of the Debtors' directors, officers and employees, the Debtors have produced evidence that they are unaware that any claims of the type being released by these provisions have been alleged or asserted against such persons.  It appears that the exculpation provisions in Section 12.12 of the Plan are appropriate and should be approved.

J.    _Constituency Settlement_.  The compromises and settlements of the Constituency Causes of Action and Litigation Rights provided for in the Plan as part of the Constituency Settlement, including the releases granted thereunder, are fair and within the bounds of reasonableness.  Accordingly, approval of the Constituency Settlement as part of the Plan is appropriate upon a consideration of the factors applicable to settlements under Fed. R. Bankr. P. 9019, including, as described in the Disclosure Statement and on the record, (i) the probability of success in the litigation; (ii) the difficulties associated with collection; (iii) the complexity of the litigation and the attendant expense, inconvenience and delay; and (iv) the paramount interests of the creditors.  The Constituency Settlement and the releases which are part of the Constituency Settlement are essential to the reorganization of the Debtors as set forth in the Plan.  The issues raised by the Examiner's Report are hotly disputed, and no court has accepted or adopted the findings, conclusions or recommendations of the Examiner's Report.  Any attempt to implement

the findings, conclusions and recommendations of the Examiner's Report would likely involve

litigation that is highly contested, time-consuming and costly.  The issues raised by the

Examiner's Report (and all other Constituency Causes of Action and Litigation Rights against

AIGGIC and Post) are resolved in their entirety by the Constituency Settlement, which provides

creditors who were constituents of the Creditors Committee with the Settlement Cash and an

option to receive the Stock Purchase Payment, which collectively approximate the recovery

proposed in the disputed recommendations of the Examiner's Report.  The Settlement Cash and

the Stock Purchase Payment is being paid by contributions from AIGGIC, Post and Silver Point

under the Constituency Settlement.  The releases contained in Sections 6.16(g) and (h) of the Plan,

and the injunction contained in Section 12.11(e) of the Plan and in Paragraph 10 below -- all of

which were adequately noticed to impacted parties in interest -- are an integral part of the

Constituency Settlement and play a critical part in the Plan.  Without the releases and injunctions

that are part of the Constituency Settlement, AIGGIC, Post and Silver Point would not have

entered into the Constituency Settlement, the Settlement Cash would not be paid, AIGGIC, Post

and Silver Point would not have agreed to contribute to payment of the fees and costs of the

Examiner and his counsel, and Silver Point would not have offered to fund the Stock Purchase

Payment.  The Settlement Cash and the Stock Purchase Payment provide substantial, legally

adequate and direct consideration to holders of or Persons with an interest in the Constituency

Causes of Action sufficient to support the releases and injunction.  Absent the Constituency

Settlement, including the releases and injunction that are an integral part of the Constituency

Settlement, (i) the prospects for the Debtors' reorganization on the terms set forth in the Plan

would not be possible, and (ii) there is a high likelihood of additional time consuming and

expensive litigation which could reduce recoveries to unsecured creditors below the levels set

forth in the Plan.  Accordingly, it is appropriate for the Plan to include Constituency Settlement

7

and the release and injunction provisions thereof.  The Constituency Settlement is a good faith

settlement, negotiated at arm's length, and should be approved pursuant to, inter alia, Fed. R.

Bankr. P. 9019.

       K.     *Exit Financing Under Plan*.  The Plan contemplates that the Debtors will

obtain exit financing pursuant to the terms of new credit agreements to be entered into with third

party lenders.  The Debtors have received a commitment for such financing (the "Exit Financing

Commitment") from Silver Point Finance, LLC and GECC (together, the "Exit Lender"), and are

continuing to negotiate the terms and provisions of new term and revolving credit agreements and

related documents consistent with the terms of the Exit Financing Commitment.  The decision to

accept the Exit Financing Commitment is the result of an extensive effort by the Debtors and their

financial advisor to market the proposed financing to potential lenders.  The evidence reflects that

the Debtors, in consultation with their advisors, selected the Exit Financing Commitment as the

most favorable exit financing option, in light of all of the circumstances.  The Debtors' entry into

new credit agreements consistent with the Exit Financing Commitment is in the best interest of the

Debtors' estates and creditors.

       L.     *Plan Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(1)*.  The

Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C.

§ 1129(a)(1).

       (i)     *Proper Classification -- 11 U.S.C. §§ 1122, 1123(a)(1)*.  Aside from
Administrative Claims and Priority Tax Claims, which need not be classified, the Plan
designates 15 classes of Claims and Interests.  The Claims and Interests placed in each class
are substantially similar to other Claims and Interests, as the case may be, in each such class.
Valid business, factual and legal reasons exist for separately classifying the various classes of
Claims and Interests created under the Plan, and such classes do not unfairly discriminate
among holders of Claims and Interests.  Thus, the Plan satisfies 11 U.S.C. §§ 1122 and
1123(a)(1).

(ii)     *Specify Unimpaired Classes -- 11 U.S.C. § 1123(a)(2)*.  Sections 3.2, 3.4 and 5.3 of the Plan specify that Classes 1, 2, 3 and 14 are unimpaired under the Plan, thereby satisfying 11 U.S.C. § 1123(a)(2).

(iii)    *Specify Treatment of Impaired Classes -- 11 U.S.C. § 1123(a)(3)*.  Sections 3.3 and 3.5 of the Plan designate Classes 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 15 as impaired and Sections 4.3 and 4.4 specify the treatment of Claims and Interests in those classes, thereby satisfying 11 U.S.C. § 1123(a)(3).

(iv)    *No Discrimination -- 11 U.S.C. § 1123(a)(4)*.  The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

(v)     *Implementation of Plan -- 11 U.S.C. § 1123(a)(5)*.  The Plan provides adequate and proper means for its implementation, thereby satisfying 11 U.S.C. § 1123(a)(5).

(vi)    *Non-Voting Equity Securities -- 11 U.S.C. § 1123(a)(6)*.  Section 6.2 of the Plan provides that the certificate or articles of incorporation and bylaws of each of the Debtors shall be amended to provide for the inclusion of provisions prohibiting the issuance of nonvoting equity securities.  Thus, the requirements of 11 U.S.C. § 1123(a)(6) are satisfied.

(vii)   *Selection of Officers and Directors -- 11 U.S.C. § 1123(a)(7)*.  In the Disclosure Statement, the Debtors properly and adequately disclosed the identity and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors and the manner of selection and appointment of such individuals or entities is consistent with the interests of holders of Claims and Interests and with public policy and, accordingly satisfies the requirements of 11 U.S.C. § 1123(a)(7).

(viii)  *Additional Plan Provisions -- 11 U.S.C. § 1123(b)*.  The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

M.     <u>*Compliance with Fed. R. Bankr. P. 3016*</u>.  The Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).  The filing of the Disclosure Statement with the Court satisfies Fed. R. Bankr. P. 3016(b).  Further, the Plan and Disclosure Statement describe in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction as required by Fed. R. Bankr. P. 3016(c).

N.     <u>*Compliance with Fed. R. Bankr. P. 3017*</u>.  The Debtors have given notice of the Confirmation Hearing as required by Fed. R. Bankr. P. 3017(d) and the Solicitation Order.  The solicitation materials prescribed by the Solicitation Order were transmitted to the creditors

entitled to vote on the Plan in accordance with Fed. R. Bankr. P. 3017(d) and, with respect to

beneficial holders in Class 9, pursuant to Fed. R. Bankr. P. 3017(e).

O.    *Compliance with Fed. R. Bankr. P. 3018*.  The solicitation of votes to accept

or reject the Plan satisfies Fed. R. Bankr. P. 3018.  The Plan was transmitted to all creditors

entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the

Plan, and the solicitation materials used and solicitation procedures followed comply with 11

U.S.C. §§ 1125 and 1126, thereby satisfying the requirements of Fed. R. Bankr. P. 3018.

P.    *Debtors' Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(2)*.  The

Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying

11 U.S.C. § 1129(a)(2).

Q.    *Plan Proposed in Good Faith -- 11 U.S.C. § 1129(a)(3)*.  The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11

U.S.C. § 1129(a)(3).  In determining that the Plan has been proposed in good faith, the Court has

examined the totality of the circumstances surrounding the formulation of the Plan.  The Debtors

filed their chapter 11 cases and proposed the Plan with legitimate and honest purposes including,

among other things, (i) reorganization of the Debtors' businesses, (ii) preservation and

maximization of the Debtors' business enterprise values through a reorganization under chapter

11, (iii) restructuring of the Debtors' capital structure, (iv) maximization of the recovery to

creditors under the circumstances of these cases, and (v) preserving jobs of the Debtors'

employees in connection with the Debtors' continuing operations.  Furthermore, the Plan reflects

and is the result of arms-length negotiations among the Debtors, Silver Point, AIGGIC, and Post

and is consistent with the best interests of the Debtors' estates, creditors, and other stakeholders.

R.    *Payments for Services or Costs and Expenses -- 11 U.S.C. § 1129(a)(4)*.

All payments made or to be made by the Debtors or by a person issuing securities or acquiring

property under the Plan, for services or for costs and expenses in or in connection with the chapter

11 cases, or in connection with the Plan and incident to the chapter 11 cases, have been approved

by, or are subject to the approval of, the Court as reasonable, thereby satisfying 11 U.S.C. §

1129(a)(4).

S.    *Directors, Officers and Insiders -- 11 U.S.C. § 1129(a)(5)*.  The Debtors

have complied with 11 U.S.C. § 1129(a)(5).  The identity and affiliations of the persons that will

serve as initial directors or officers of the Reorganized Debtors after confirmation of the Plan have

been fully disclosed in the Disclosure Statement.  The appointment to, or continuance in, such

offices of such persons is consistent with the interests of holders of Claims against and Interests in

the Debtors and with public policy.  The identity of any insider that will be employed or retained

by the Reorganized Debtors and the nature of such insider's compensation have also been fully

disclosed, to the extent applicable and presently determinable.

T.    *No Rate Changes -- 11 U.S.C. § 1129(a)(6)*.  There is no regulatory

commission having jurisdiction after confirmation of the Plan over the rates of the Debtors and no

rate change provided for in the Plan requiring approval of any such commission.  Therefore, 11

U.S.C. § 1129(a)(6) is not applicable.

U.    *Best Interests of Creditors -- 11 U.S.C. § 1129(a)(7)*.  The Plan satisfies 11

U.S.C. § 1129(a)(7).  The liquidation analysis attached as Appendix D to the Disclosure Statement

and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and

credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of

an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan,

on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less

than the amount that such holder would receive or retain if the Debtors were liquidated under

chapter 7 of the Bankruptcy Code on such date.

11

V.    *Deemed Acceptance or Rejection by Certain Classes -- 11 U.S.C.*

*§ 1129(a)(8)*.  Classes 1, 2, 3 and 14 are classes of unimpaired Claims and Interests that are

conclusively presumed to have accepted the Plan under 11 U.S.C. § 1126(f).  Classes 11, 12, 13

and 15 are not entitled to receive or retain any property under the Plan and, therefore, are deemed

to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  Although 11 U.S.C. § 1129(a)(8) has

not been satisfied with respect to Classes 11, 12, 13 and 15, the Plan is confirmable because the

Plan satisfies 11 U.S.C. § 1129(b) with respect to those classes of Claims and Interests, as set forth

in Paragraph BB below.

W.    *Treatment of Administrative, Priority and Tax Claims -- 11 U.S.C.*

*§ 1129(a)(9)*.  The treatment of Administrative Claims, Priority Tax Claims and Other Priority

Claims pursuant to Sections 4.1(a), 4.1(b) and 4.2(a) of the Plan satisfies the requirements of 11

U.S.C. §§ 1129(a)(9)(A), (B) and (C).

X.    *Acceptance by Impaired Class -- 11 U.S.C. § 1129(a)(10)*.  Classes 4, 5, 6,

7, 8, 9 and 10 are impaired classes of Claims that voted to accept the Plan in accordance with 11

U.S.C. § 1126(e) and, to the Debtors' knowledge, do not contain insiders whose votes have been

counted.  Therefore, the requirement of 11 U.S.C. § 1129(a)(10) that at least one class of Claims

against or Interests in the Debtors that is impaired under the Plan has accepted the Plan,

determined without including any acceptance of the Plan by any insider, has been satisfied.

Y.    *Feasibility -- 11 U.S.C. § 1129(a)(11)*.  The projections set forth in

Appendix B to the Disclosure Statement and other evidence proffered or adduced by the Debtors

at the Confirmation Hearing with respect to feasibility (i) are persuasive and credible, (ii) have not

been controverted by other evidence or challenged in any objection and (iii) establish that

confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

financial reorganization, of the Reorganized Debtors, thus satisfying the requirements of 11 U.S.C. § 1129(a)(11).

      Z.    *Payment of Fees -- 11 U.S.C. § 1129(a)(12)*.  All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to Section 12.3 of the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12).

      AA.    *Continuation of Retiree Benefits -- 11 U.S.C. § 1129(a)(13)*.  Any retiree benefits within the meaning of 11 U.S.C. § 1114 will be treated as executory contracts and assumed pursuant to Section 7.5 of the Plan.  Thus, the requirements of 11 U.S.C. § 1129(a)(13) are satisfied.

      BB.    *Fair and Equitable; No Unfair Discrimination -- 11 U.S.C. § 1129(b)*.  Classes 11, 12, 13 and 15 are impaired classes of Claims and Interests that are deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 11, 12, 13 and 15 as required by 11 U.S.C. § 1129(b)(1). Moreover, there is insufficient value in the Debtors' assets to produce payment in full to Classes 9 and 10, which have prior rights to Classes 11, 12, 13 and 15.  Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy 11 U.S.C. § 1129(a)(8).  Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all classes of Claims and Interests, including, but not limited to, Classes 11, 12, 13 and 15.

      CC.    *Principal Purpose -- 11 U.S.C. § 1129(d)*.  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan therefore satisfies the requirements of 11 U.S.C. § 1129(d).

DD.     *No Objection to Disposition of Contracts and Leases*.  No party to an
executory contract or unexpired lease to be assumed by the Debtors pursuant to Sections 7.1,
7.5(a), 7.5(b), 7.5(c) and 7.6(b) of the Plan or rejected by the Debtors pursuant to Sections 7.3,
7.5(d), 7.5(e), 7.5(f) and 7.6(a) of the Plan has objected to the assumption or rejection thereof.

EE.     *No Liquidation*.  Because the Plan does not provide for the liquidation of all
or substantially all of the property of the Debtors' estates and the Reorganized Debtors will engage
in businesses following consummation of the Plan, 11 U.S.C. § 1141(d)(3) is not applicable.

FF.     *Burden of Proof*.  The Debtors, as proponents of the Plan, have met their
burden of proving the elements of 11 U.S.C. §§ 1129(a) and (b) by a preponderance of the
evidence.

GG.     *Satisfaction of Confirmation Requirements*.  The Plan satisfies the
requirements for confirmation set forth in 11 U.S.C. § 1129.  The Debtors, GECC and the Exit
Lender have represented to the Court that the conditions precedent to confirmation set forth in
Section 10.1 of the Plan have either been satisfied or waived.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      Objections.  All objections that have not been withdrawn, resolved, waived or
settled are overruled on the merits.

2.      Confirmation of Plan.  The Plan is approved and confirmed under 11 U.S.C. §
1129.

3.      Incorporation of Terms and Provisions of Plan.  The terms and provisions of the
Plan are incorporated by reference into and are an integral part of this Confirmation Order.  Each
term and provision of the Plan is valid, binding and enforceable as though fully set forth herein.
The provisions of the Plan and this Confirmation Order, including the findings of fact and
conclusions of law set forth herein, are non-severable and mutually dependent.  The failure

14

specifically to include or reference any particular term or provision of the Plan in this

Confirmation Order shall not diminish or impair the effectiveness of such term and provision, it

being the intent of the Court that the Plan be confirmed in its entirety.

4.      Binding Effect.  Effective on the Effective Date, and except as expressly provided

in this Confirmation Order, the Plan and its provisions shall be binding upon the Debtors, the

Reorganized Debtors, any entity acquiring or receiving property or a distribution under the Plan

and any holder of a Claim against or Interest in the Debtors, including all governmental entities,

whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not

such holder or entity has accepted the Plan.  Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a) and the

provisions of this Confirmation Order, the Plan and all Plan-related documents shall apply and be

enforceable notwithstanding any otherwise applicable non-bankruptcy law.

5.      Approval of Substantive Consolidation.  The substantive consolidation of the

Debtors' estates for the purposes and with the effects described in Section 2.2 of the Plan is

approved.

6.      Approval of Constituency Settlement.  The Constituency Settlement described in

Section 6.16 of the Plan is approved.  The releases and injunction against enforcement of the

Constituency Causes of Action and Litigation Rights provided for in the Plan as part of the

Constituency Settlement are valid and enforceable.  The Constituency Settlement is binding on the

owners of and the Persons with an interest in the Constituency Causes of Action and Litigation

Rights.

7.      Determination of Discharge.  Pursuant to Section 12.10(b) of the Plan, as of the

Effective Date, except as provided in the Plan or this Order or under the terms of the documents

evidencing or orders approving the DIP Facility and/or Exit Facility, all Persons shall be precluded

from asserting against the Debtors, the Reorganized Debtors or their respective properties any

15

other or further Claims, Interests or Liens relating to the Debtors based upon any act, omission,

transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In

accordance with the foregoing, except as provided in the Plan or in this Order or under the terms

of the documents evidencing or orders approving the DIP Facility and/or the Exit Facility, this

Order shall be a judicial determination of discharge of all such Claims, termination of all

FiberMark Interests, and cancellation of all Liens pursuant to Sections 524 and 1141 of the

Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any

time, to the extent that such judgment relates to a discharged Claim, terminated Interest or

cancelled Lien.

        8.      <u>Cancellation of Evidences of Indebtedness</u>.  Pursuant to Section 6.4 of the Plan,

except as provided in the Plan or in this Order or under the terms of the documents evidencing and

orders approving the DIP Facility and/or the Exit Facility, on the Effective Date, all of the

Debtors' obligations under the agreements and other documents evidencing the Claims or rights of

any holder of a Claim against the Debtors, and any obligations with respect to the Old Securities

(including, without limitation, the FiberMark Notes, the FiberMark Interests, and any other note,

bond or indenture evidencing or creating any public indebtedness or obligation of any Debtor),

shall be deemed extinguished, cancelled and of no further force or effect.

        9.      <u>Approval of Plan Releases and Exculpation; Injunction</u>.  The releases by the

Debtors of parties provided in Section 12.9(a) of the Plan, the consensual and voluntary releases

by creditors of the Debtors' directors, officers and employees provided in Section 12.9(b) of the

Plan, and the exculpations provided for in Section 12.12 of the Plan are approved.  As of the

Effective Date, (a) the Reorganized Debtors and any Persons seeking to exercise the rights of the

Debtors' estates (including, without limitation, any estate representative appointed pursuant to 11

U.S.C. § 1123(b)(3)(B)), as to the Persons released pursuant to Section 12.9(a), (b) all creditors

16

who have voted to accept the Plan, as to the Persons released in Section 12.9(b), and (c) all parties

in interest as to the Persons exculpated in Section 12.12, are permanently enjoined from taking any

of the following actions on account of claims, obligations, suits, judgments, damages, demands,

debts, rights, causes of action, or liabilities or terminated interests or rights against any such

Persons:  commencing or continuing, in any manner or in any place, any action or other

proceeding; enforcing, attaching, collecting, or recovering in any manner any judgment, award,

decree, or order; creating, perfecting, or enforcing any lien or encumbrance; asserting a setoff

against any debt, liability, or obligation due to any such Person; or commencing or continuing any

action, in any manner, in any place, or against any Person that does not comply with or is

inconsistent with the provisions of the Plan.

       10.     <u>Approval of Constituency Settlement Releases; Injunction</u>.  All Persons who have

held, currently hold, may hold, or allege that they hold, directly or indirectly, Constituency Causes

of Action or Litigation Rights against Silver Point, AIGGIC, or Post are permanently enjoined

from commencing or continuing, in any manner or in any place, any action or other proceeding

against Silver Point, AIGGIC, or Post that asserts Constituency Causes of Action or Litigation

Rights.  This injunction shall survive the closing or dismissal of the Chapter 11 Case, and may be

enforced after the closing or dismissal of the Chapter 11 Case by application to the Court.  The

releases and injunctions described in Sections 6.16(g), 6.16(h) and 12.11(e) of the Plan are

expressly incorporated by reference and made a part of this Order.

       11.     <u>Approval of Constituency Settlement Contribution Provision</u>.  In the event the

Debtors or Reorganized Debtors sue any Person, and in connection with such suit such Person

asserts a claim for contribution, indemnification, recovery of loss or potential loss, or otherwise,

however denominated, arising under federal, state, or foreign law, including claims based upon

tort or contract, as direct claims, crossclaims, counterclaims, or third party claims in any court,

17

arbitration, administrative agency or forum, or in any other manner (each a "Contribution Claim"
and collectively "Contribution Claims") against Silver Point, AIGGIC, or Post, then the Debtors
or Reorganized Debtors shall automatically, and without any further act on the part of any Person,
credit against or reduce the amount of any judgment any of the Debtors or Reorganized Debtors
may obtain against such Person by an amount equal to the amount as is determined by trial or
otherwise in a Final Order to be the amount due to such Person from Silver Point, AIGGIC, or
Post, on account of such Contribution Claim.  For purposes of this provision, the terms "sue" and
"suit" do not include objections by the Debtors or Reorganized Debtors to any applications or
other requests for payment of Professional Fee Claims, and "judgment" does not include a Final
Order of the Bankruptcy Court disallowing the fees and expenses of any Professional, whether
previously paid or requested to be paid.  Accordingly, Silver Point, AIGGIC, and Post shall have
no rights against the Debtors or the Reorganized Debtors for the amounts of any disallowed fees
and expenses that any Professional may seek to recover from Silver Point, AIGGIC, or Post.
Nothing contained in this paragraph shall operate to modify or limit Section 6.16(f) of the Plan.

12.    Holding of New Common Stock.  Each holder of New Common Stock shall be
deemed to be bound by, and shall hold such New Common Stock subject to, the terms and
provisions of the New FiberMark Charter (including, without limitation, provisions restricting the
Transfer (as defined in the New FiberMark Charter) of New Common Stock), as the same may be
amended from time to time.

13.    Approval of Exit Financing Under Plan.  The Exit Facility is approved, the Debtors'
execution and delivery of the Exit Financing Commitment is ratified, and the Debtors or
Reorganized Debtors are authorized and directed to pay the fees and costs required thereunder and
to perform their obligations thereunder.  The Debtors or Reorganized Debtors, as applicable, are
authorized to execute, deliver and perform their obligations under new term and revolving credit

18

agreements, mortgages, securities agreements and other documents (collectively, the "Exit

Financing Documents") with terms and provisions substantially consistent with those contained in

the Exit Financing Commitment, with such changes as may be agreed between the Debtors or

Reorganized Debtors, as applicable, and the lenders thereunder, as necessary or appropriate to

effect the exit financing in accordance with the Plan.  The Exit Financing Documents shall

constitute legal, valid, binding and authorized obligations of the Debtors or Reorganized Debtors,

as applicable, enforceable in accordance with their terms, and shall create the security interests,

liens and mortgages purported to be created thereby.

14.    Georgia Pacific Stipulation.  Pursuant to paragraph 12 of the Stipulation and

Agreement By and Between Debtors and Georgia-Pacific Corporation dated December 9, 2004

(the "FM-GP Stipulation"), which was approved by this Court pursuant to the Order Approving

Stipulation Between the Debtors and Georgia-Pacific Corporation, Including the Assumption of

Certain Executory Contracts entered on January 3, 2005 (the "FM-GP Order"), the FM-GP

Stipulation and FM-GP Order remain valid and enforceable.[3]

15.    Plan Implementation Authorization.  Pursuant to the Plan, each of the Debtors and

the Reorganized Debtors is authorized and directed to negotiate, execute, deliver, implement, file

or record such contracts, instruments, releases, leases, indentures and other agreements or

documents and take such actions as may be necessary or appropriate to effectuate, implement and

further evidence the terms and conditions of the Plan and any documents, notes or securities

issued pursuant to the Plan, in form and substance reasonably acceptable to the Debtors, GECC

and the Exit Lender or the agent for the Exit Lender under the Exit Facility.  The Debtors and the

Reorganized Debtors, and their respective directors, officers, members, agents and attorneys, are

---

[3]    All stipulations or orders approved or entered by this Court in these chapter 11 cases shall have continuing validity and
enforceability even though not specifically referenced herein.

19

authorized and empowered to negotiate, issue, execute, deliver, file or record any agreement,

document or security, including, without limitation, the New FiberMark Charter, the New

FiberMark By-laws, the New Common Stock, the Exit Financing Documents and all other

documents referenced in the Plan in form and substance as aforesaid, as the same may be

modified, amended and supplemented in a manner reasonably acceptable to GECC and the Exit

Lender, where applicable, and to take any action necessary or appropriate to implement, effectuate

and consummate the Plan in accordance with its terms, or take any or all corporate actions

authorized to be taken pursuant to the Plan in a manner reasonably acceptable to GECC and the

Exit Lender, where applicable, including but not limited to any merger, release, amendment or

restatement of any bylaws, certificates of incorporation or other organization documents of the

Debtors, whether or not specifically referred to in the Plan or any exhibit thereto, without further

order of the Court.  Any or all such documents shall be accepted by each of the respective state

filing offices and recorded in accordance with applicable state law and shall become effective in

accordance with their terms and the provisions of state law.

16.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute

all approvals and consents required, if any, by the laws, rules or regulations of any State or any

other governmental authority with respect to the implementation or consummation of the Plan and

any documents, instruments or agreements, and any amendments or modifications thereto, and any

other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents,

instruments or agreements, and any amendments or modifications thereto.

17.    <u>Exemption from Certain Taxes</u>.  Pursuant to 11 U.S.C. § 1146(c), neither (a) the

issuance, transfer or exchange of notes or equity securities under the Plan, (b) the creation of any

mortgage, deed of trust, lien, pledge or other security interest, (c) the making or assignment of any

contract, lease or sublease, nor (d) the making or delivery of any deed or other instrument of

20

transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any

merger agreements, any agreements of consolidation, restructuring, disposition, liquidation, or

dissolution, any deeds, any bills of sale, or any transfers of tangible or intangible property, shall be

subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax,

mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other

similar tax or governmental assessment.  State and local governmental officials or agents are

hereby directed to forego the collection of any such tax or governmental assessment and to accept

for filing and recordation any of the foregoing instruments or other documents without the

payment of any such tax or governmental assessment.

18.     Exemption from Securities Laws.  The exemption from the requirements of Section

5 of the Securities Act of 1933, and any state or local law requiring registration for the offer, sale,

issuance, exchange or transfer of a security provided for in the Plan in exchange for Claims

against or Interests in the Debtors, or registration or licensing of an issuer of, underwriter of, or

broker dealer in, such security is authorized by 11 U.S.C. § 1145.  The offer and sale of the New

Common Stock is exempt from registration under 11 U.S.C. § 1145 and such securities are freely

tradable by the holders thereof except to the extent a holder is an "underwriter" as defined in 11

U.S.C. § 1145(b) and except as transfer of such shares may be restricted under the terms of the

New FiberMark Charter or the New FiberMark By-laws.

19.     Applicable Non-Bankruptcy Law.  Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a),

the provisions of this Confirmation Order, the Plan, or any other amendments or modifications

thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy

law.

20.     Appointment of Directors.  The following seven persons are appointed to the Board

of Directors of Reorganized FiberMark, to serve from and after the Effective Date as provided in

the Plan: Harry Wilson, David L. Sawyer, Ian W. Millar, Elmar B. Schulte, Robert A. Moran, Frederick Fogel and Thomas G. Weld.  Any vacancy existing as of the Effective Date shall be filled in accordance with the terms of the New FiberMark Charter and the New FiberMark By-laws.

21.     Approval of Assumption or Rejection of Contracts and Leases.  Unless otherwise provided in an order of or in proceedings before the Court specifically dealing with (a) an executory contract or unexpired lease that is subject to assumption pursuant to Sections 7.1, 7.5(a), 7.5(b), 7.5(c), 7.6(a) and 7.6(b) of the Plan, the assumption of such contract or lease is hereby approved as proposed in such Sections 7.1, 7.5(a), 7.5(b), 7.5(c), 7.6(a) and 7.6(b); and (b) an executory contract or unexpired lease that is subject to rejection pursuant to Sections 7.3, 7.5(d), 7.5(e), 7.5(f) and 7.6(a) of the Plan, the rejection of such contract is hereby approved as proposed in such Sections 7.3, 7.5(d), 7.5(e), 7.5(f) and 7.6(a).

22.     Reversal.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, in the absence of a stay of the Confirmation Order, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, in the absence of a stay of the Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

23.     Authorization to Consummate Plan.  Notwithstanding Fed. R. Bankr. P. 3020(e), the Confirmation Order shall take effect immediately upon its entry and the Debtors are authorized

22

to consummate the Plan immediately after entry of this Confirmation Order in accordance with the terms of the Plan.

24.    Notice of Entry of Confirmation Order.  On or before the tenth business day following the date of entry of this Confirmation Order, the Debtors shall serve notice of the entry of this Confirmation Order pursuant to Fed. R. Bankr. P. 2002(f)(7), 2002(k) and 3020(c) on all holders of Claims and Interests, the U.S. Trustee, and other parties in interest, by causing notice substantially in the form attached hereto as Exhibit A to be delivered to such parties by first-class mail, postage prepaid.

25.    Notice of Effective Date.  Within five business days following the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the Effective Date with the Bankruptcy Court and serve a copy of such notice on the parties named on the Official Service List maintained in these cases.

26.    Filing of Report of Substantial Consummation.  The Debtors shall comply with VT. LBR 3022-1 by filing the report of substantial consummation and the motion for final decree no later than 180 days after the entry of this Order, unless the Court, for cause shown, extends the time upon motion filed and served within such 180-day period.

27.    Filing of Affidavit of Cash Disbursements.  The Debtors shall file with the Court and serve on the U.S. Trustee an affidavit showing all cash disbursements for each month after confirmation of the case.  The affidavit shall be due on the last day of the month after the month reported.  The duty to file the monthly affidavit shall cease upon the entry of the final decree, the conversion of the case to another chapter under title 11 of the United States Code, or the dismissal of the case.  The affidavit shall disclose all disbursements for the Reorganized Debtors by stating the total amount of payments made in that month pursuant to the Plan, with a subtotal of payments for each class defined in the Plan.  The affidavit will further disclose all disbursements made,

23

whether made under the Plan or in the ordinary course of business.  With respect to payments made under the Plan, the affidavit shall disclose (a) whether the total amount paid to each class complies with the terms of the Plan, is in a lesser amount, or whether there is a good faith dispute about the amount owed, and (b) the administrative expenses paid.

28.     Payment of Statutory Fees.  The Debtors shall pay a sum certain determined by the U.S. Trustee to the U.S. Trustee for fees due pursuant to 28 U.S.C. § 1930(a)(6), within the later of ten (10) days of the entry of this Order or ten (10) days of the Debtors' receipt of a notice of such sum certain from the U.S. Trustee.  The Debtors shall continue to make timely payments to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) for all periods up to the date the case is converted, dismissed, or closed by Court Order, and the Debtors shall provide an appropriate affidavit indicating the cash disbursements for each subsequent calendar quarter within thirty (30) days following the end of the quarter until the case is converted, dismissed, or closed by Court Order.

29.     Implementation Status Conference. Pursuant to 11 U.S.C. § 105(d), the Court shall hold a telephonic status conference on February 28, 2006  at 9:30 a.m. to address the status of all issues relating to implementation of the Plan.

Dated: _____, 2005

_____
HONORABLE COLLEEN A. BROWN
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

NOTICE OF ENTRY OF CONFIRMATION ORDER

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF VERMONT

In re:

**FiberMark, Inc.,**
**FiberMark North America, Inc., and**
**FiberMark International Holdings LLC,**
Debtors.

Chapter 11
Case No. 04-10463 cab
Jointly Administered

### NOTICE OF (A) ENTRY OF ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11, TITLE 11, UNITED STATES CODE OF FIBERMARK, INC., ET AL., DEBTORS, AND (B) BAR DATES FOR FILING ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE/SUBSTANTIAL CONTRIBUTION CLAIMS AND CONTRACT/LEASE REJECTION DAMAGES CLAIMS

| Debtor | Other Names Used | Address | Tax I.D. | Case No. |
|---|---|---|---|---|
| FiberMark, Inc. | N/A | 161 Wellington Road P.O. Box 498 Brattleboro, Vermont 05302 | 82-0429330 | 04-10463 cab |
| FiberMark North America, Inc. | FiberMark Filter and Technical Products, Inc., FiberMark DSI, Inc., FiberMark Office Products, LLC, FiberMark Durable Specialties, Inc. | 161 Wellington Road P.O. Box 498 Brattleboro, Vermont 05302 | 54-1684641 | 04-10464 cab |
| FiberMark International Holdings LLC | N/A | 161 Wellington Road P.O. Box 498 Brattleboro, Vermont 05302 | 82-0429330 | 04-10465 cab |

**TO:      ALL PARTIES IN INTEREST**

**PLEASE TAKE NOTICE THAT:**

1.       On _____, 2005, the United States Bankruptcy Court for the District of Vermont (the "Bankruptcy Court") entered its Order Confirming Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc., et al., Debtors (the "Confirmation Order"). Unless otherwise defined herein, capitalized terms used in this Notice shall have the meanings ascribed to such terms in the Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc., et al., Debtors, dated November 1, 2005 (the "Plan").

2.       Copies of the Confirmation Order and the Plan may be obtained by accessing http://www.fibermark.com or on the Bankruptcy Court's website, http://www.vtb.uscourts.gov.

3.       The Plan will become effective in accordance with its terms on the date on which all conditions to the effective date of the Plan as set forth in Section 10.2 of the Plan have been satisfied or waived as provided in Section 10.3 of the Plan (the "Effective Date"). The Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court, mail a copy thereof to all parties on the Official Service List maintained in these cases, and post a copy on their website at http://www.fibermark.com.

4.       In accordance with Section 12.2 of the Plan, all requests for payment of an Administrative Claim (other than as set forth in Sections 4.1(a) and 12.1 of the Plan) must be filed with the Bankruptcy Court and served on the undersigned counsel for the Reorganized Debtors no later than forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date"). Holders of Administrative Claims who fail to timely file and serve a request for payment shall be forever barred from seeking payment of any such Administrative Claims from the Estates, the Debtors or the Reorganized Debtors. The Debtors shall have sixty (60) days after receipt of each request for payment to review and object to the Administrative Claim alleged therein, after which time a hearing for determination of allowance of such Administrative Claim will be scheduled. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable by a Debtor in the ordinary course of business.

5.      In accordance with Section 12.1(a) of the Plan, all final requests for payment of Professional Fee Claims pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code and Substantial Contribution Claims under Section 503(b)(3), (4), or (5) of the Bankruptcy Code must be filed with the Bankruptcy Court and served on the Reorganized Debtors, the undersigned counsel for the Reorganized Debtors, and any other necessary parties-in-interest no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Holders of Professional Fee Claims or Substantial Contribution Claims who fail to timely file and serve a final request for payment shall be forever barred from seeking payment of any such Professional Fee Claims or Substantial Contribution Claims from the Estates, the Debtors or the Reorganized Debtors.  Objections to such requests for payment must be filed with the Bankruptcy Court and served on the requesting Professional or other entity seeking payment, the Reorganized Debtors and the undersigned counsel for the Reorganized Debtors no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for payment was served.

6.      In accordance with Section 7.4 of the Plan, if the rejection by a Debtor of an executory contract or unexpired lease pursuant to any provision of the Plan or otherwise results in a Claim, then such Claim shall be forever barred and shall not be enforceable against any Debtor or Reorganized Debtor or the properties of any of them unless a Proof of Claim is filed with the Bankruptcy Court and served upon the undersigned counsel for the Reorganized Debtors within thirty (30) days after the entry of the order authorizing the rejection of such executing contract or unexpired lease. The foregoing applies only to Claims arising from the rejection of an executory contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a proof of claim filed by earlier applicable bar dates or shall be barred and unenforceable.


Dated:  _____, 2005

D. J. Baker                                          Raymond J. Obuchowski
Skadden, Arps, Slate, Meagher & Flom LLP            Obuchowski & Emens-Butler
Four Times Square                                    P.O. Box 60, Bethel
New York, New York 10036-6522                        Vermont 05032-0060
Telephone Number:  (212) 735-5182                    Telephone Number:  (802) 234-6244
Fax number: (917) 777-2150                           Fax number: (802) 234-6245
Co-Counsel for Debtors                               Co-Counsel for Debtors

2