*Formatted for Electronic Distribution*                                          *Not for Publication*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**

_____

Filed & Entered
On Docket

03/11/06

In re:
**FIBERMARK, INC.,
FIBERMARK NORTH AMERICA, INC.,** and                **Chapter 11 Case**
**FIBERMARK INTERNATIONAL HOLDINGS, INC.,**          **# 04-10463**
                              Debtors.               **Jointly Administered**

_____

**MEMORANDUM OF DECISION**
ON THE U.S. TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
AND ON CHANIN'S CROSS-MOTION FOR SUMMARY JUDGMENT

The cross-motions for summary judgment before the Court test the limits of the obligation of professionals to disclose "all connections" as a prerequisite to appointment under FED. R. BANKR. P. 2014 ("Rule 2014"). The United States Trustee (the "UST") filed an objection to the third and final fee applications of Chanin Capital Partners, LLC ("Chanin"), the financial advisors and investment bankers to the former official committee of unsecured creditors (the "Committee"), asserting that Chanin's failure to disclose its connections to the members of the committee, and the attorneys and accountants appointed in this case constitutes a sanctionable violation of Rule 2014. Chanin counters that the UST's interpretation of the requirements of Rule 2014 exceeds what any court has ever declared to be required, is inconsistent with practice in the community of bankruptcy professionals, and is not a reasonable basis for a monetary sanction against Chanin. For the reasons set forth below, the Court finds that the UST's interpretation of Rule 2014 is not unreasonable, but the facts and circumstances presented do not warrant a dramatic reduction in Chanin's fees based on the alleged violation of Rule 2014.

**JURISDICTION**

The Court has jurisdiction over these summary judgment motions under 28 U.S.C. §§ 157(b)(2)(A) and 1334.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247.

Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990), cert. denied, 500 U.S. 928 (1991).

## THE UNDISPUTED FACTS

The parties have filed a Joint Statement of Undisputed Material Facts (doc. # 2186) that sets forth the following pertinent facts.[1]

1. On March 30, 2004, the Debtors filed voluntary petitions under chapter 11 in this Court.

2. On April 4, 2004, the UST appointed an Unsecured Creditors' Committee.

3. Although there were a few changes in the composition of the Committee from time to time, at all times relevant to this matter, AIG Global Investment Group, Inc. ("AIG"), Wilmington Trust Company ("Wilmington"), Post Advisory Group, LLC ("Post") and Silver Point Capital, L.P. ("Silver Point") were members of the Committee.

4. The Committee hired Chanin to serve as its financial advisor on or about April 7, 2004 and on May 7, 2004 the Committee filed an application requesting appointment of Chanin (doc. #216, the "Application").

5. Mr. Skip Victor of Chanin filed an affidavit in support of the Application (the "Victor Affidavit") representing that Chanin had performed the following review, in accordance with the requirements of Rule 2014 and 11 U.S.C. §1103(b):

> Chanin has conducted a conflicts search and made due inquiry regarding its connections and relations with the members of the Committee, the Debtors, their board of directors, their creditors of record, their equity shareholders, and the attorneys and accountants of each of the foregoing, the Office of the United State Trustee, and the Honorable Colleen A. Brown to determine whether it has any conflicts of interest or other relationships that might bear on its employments. In addition to other inquires, Chanin has researched its client files and records that contain relevant information and that have been retained in the normal course of business. In connection with this search, Chanin obtained from the

---

[1] The Court has condensed the undisputed facts identified by the parties, but sets forth in full the quotations from the Chanin disclosures that the parties have identified as material, since the sufficiency and circumstances of these disclosures are precisely what are at issue herein.

2

Committee the names of certain individuals and entities that may be parties-in-interest in these bankruptcy cases (all of the persons and entities identified in this paragraph, the "Potential Parties-In-Interest"). To the best of my knowledge, information, and belief, and after due inquiry, neither I nor Chanin, nor any professional employee of Chanin has any connection with a Potential Party-In-Interest.

The Victor Affidavit stated that -- following the foregoing inquiry -- the affiant had concluded that Chanin

(i) does not have any connection with the Debtors, the Debtors' creditors, their respective attorneys and accountants or any other parties-in-interest (as reasonably known to us),

(ii) pursuant to 11 U.S.C. section 1103(b), does not provide advisory services to any other entity having an adverse interest in connection with these cases and

(iii) is "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code.

See doc #. 2186, par. 4.

6. The Victor Affidavit also contained the following language, describing the parameters of the preceding disclosures:

"[t]o the best of my knowledge, information and belief, and after due inquiry, Chanin has not been retained to assist any person or entity other than the Committee on matters relating to these bankruptcy cases. If the Application is approved by the Court, Chanin will not accept any engagement or perform any services in these bankruptcy cases for any person or entity other than the Committee. Chanin, however, will continue to provide services that do not relate to these bankruptcy cases to persons or entities that may be Potential Parties-In-Interest." . . . "Except as described above, to the best of my knowledge, information and belief, and after due inquiry, neither I, Chanin, nor any professional employee of Chanin represents or holds an interest of the Debtors' bankruptcy estates or their creditors." . . . "I am not related or connected to and, to the best of my knowledge, information and belief, and after due inquiry, no[] other professional of Chanin is related or connected to the Honorable Colleen A. Brown." . . . "[e]xcept as described herein,

3

neither Chanin nor, to the best of my knowledge, any employee of Chanin is or was a creditor or equity holder of the Debtors." . . . "Neither Chanin nor to the best of my knowledge, any employees of Chanin is or was a consultant or advisor for any outstanding security of the Debtors." "Neither Chanin nor to the best of my knowledge, any employees of Chanin is or was within two years before the commencement of these cases, a director, officer or employee of the Debtors or an investment banker of the Debtors." . . . "The debtors have numerous relationships with third parties and creditors. Consequently, although every reasonable effort has been made to discover and eliminate the possibility of conflict, including the efforts outlined above, Chanin is unable to state with certainty whether one of its clients or an affiliated entity holds a claim or otherwise is a party-in-interest in these chapter 11 cases. If Chanin discovers any information that is contrary to or pertinent to the disclosures made herein, Chanin will promptly disclose such information to the Court on notice to the United States Trustee and other appropriate parties."

See doc #. 2186, par. 4.

7. On June 14, 2004, the Court entered an order authorizing retention of Chanin as financial advisor and investment banker to the Committee, pursuant to 11 U.S.C. §327(a).

8. On or about May 13, 2005, the UST filed an objection to the Third Interim Fee Application of Akin Gump Strauss Hauer & Feld LLP ("Akin"), attorneys for the Committee, which asserted, among other things, that Akin had not met its duty to timely inform the Court of all its "connections" with parties in the case. See doc #1469 at par. 4.

9. This prompted Chanin to undertake a further review and supplement certain information set forth in the Victor Affidavit.

10. On June 13, 2005, Chanin filed a second affidavit ("Victor Supplemental Affidavit") that supplemented the Victor Affidavit by reciting certain items respecting certain Potential Parties-In-Interest in these chapter 11 cases. Those items included the following:

Committee Members. Chanin has represented official, ad hoc, or steering committees in unrelated matters, in which parties in interest in this case have been parties in interest, including in capacities as members of such aforementioned committees. They include:

4

    *a. Silver Point Capital. L.P. ("Silver Point")* Chanin acted as financial advisor to the Unsecured Creditors' Committee for iPCS, wherein Silver Point acquired securities in the latter stages of the case but did not participate as a member of the Committee. Chanin acted as financial advisor to an ad-hoc committee of noteholders of Trump Casino Holdings ("TCH"), wherein Silver Point at times was a member of the ad-hoc committee. Chanin acted as financial advisor to an ad-hoc committee of secured lenders for Pegasus Satellite Television, wherein Silver Point was a member of the unsecured creditors' cornmittee. Chanin acts as financial advisor to the Lease Indenture Trustee and Pass Through Trustee for MIRMA wherein Silver Point is an interested party. Chanin acted as financial advisor to the unsecured creditors' committee for RCN Corp., wherein Silver Point was a member of the bank group steering committee.

    *b. AIG Global Investment Group. ("AIG")* Chanin acted as financial advisor to the unsecured creditors' committee for Venture Holdings wherein AIG was a committee member. Chanin acted as financial advisor to an ad-hoc committee of noteholders in IWO Holdings wherein AIG was a member. Chanin acted as financial advisor to the unsecured creditors' committee for iPCS, wherein AIG acquired securities in the latter stages of the case but did not participate as a member of the committee. Chanin acted as financial advisor to an ad-hoc committee of noteholders for US Unwired, wherein AIG was a

committee member. Chanin acted as financial advisor to an ad-hoc committee for Alamosa Holdings, wherein AIG was an interested party. Chanin acted as financial advisor to an ad-hoc committee of noteholders for American Cellular, wherein AIG was a member. Chanin acts as financial advisor to the equity committee for Adelphia, wherein AIG DKR Sound Shore Funds is a member. Chanin acts as financial advisor to the ad hoc committee of noteholders of Allied Holdings, wherein AIG is a member of the ad hoc committee.

    *c. Post Advisory Group ("Post")* Chanin acts as financial advisor to the unsecured creditors' cornmittee for Venture Holdings, wherein Post was a member of a pre-petition ad-hoc committee of noteholders. Chanin acted as financial advisor to an ad-hoc committee of noteholders for Merrill Corporation, wherein Post was a member. Chanin acted as financial advisor to an ad-hoc committee of noteholders for Denny's, wherein Post was an interested party.

    *d. Wilmington Trust Company ("Wilmington Trust")* Chanin acted as financial advisor to the unsecured creditors' committee in Global Crossing, wherein Wilmington Trust was a member.

    *e. E.I. DuPont de Nemours & Co. ("DuPont")* Chanin acted as financial advisor to the unsecured creditors' committee in Global Crossing, wherein DuPont Capital Management was a member.

<u>Professionals</u>. Chanin has worked with (or opposite) many of the professionals involved in this case. They include:

    *a. Akin Gump Strauss Hauer & Feld LLP ("Akin Gump")* Chanin acts as financial advisor to the equity committee for Adelphia, wherein Akin Gump was counsel to a member of an adhoc creditors committee. Chanin acted as financial advisor to the unsecured creditors' committee for Venture Holdings, wherein Akin Gump was counsel for the Committee. Chanin acted as financial advisor to the secured lender Steering Committee for Pegasus Satellite Communications, wherein Akin Gump was counsel to the unsecured creditors' committee. Chanin acts as financial advisor to the ad-hoc high yield bondholders committee for Satelités Mexicano ("SatMex"), wherein Akin Gump is the ad-hoc committee's counsel. Chanin has been selected as the financial advisor to the unsecured creditors' committee for Collins and Aikrnan, wherein Akin Gump is the committee's counsel. Chanin acts as the financial advisor to the equity committee of Loral Space and Communications, wherein Akin is an advisor to the Official Committee of Unsecured Creditors for the company.

6

    *b. Skadden Arps Slate Meagher & Flom, LLP ("Skadden")* Chanin acts as financial advisor to the Lease Indenture Trustee and Pass Through Trustee for MIRMA**,** wherein Skadden was counsel to the company (prebankruptcy). Chanin acted as financial advisor to the unsecured creditors' committee for GenTek, wherein Skadden was counsel to the debtors. Chanin acted as financial advisor to the unsecured creditors' committee for RCN, wherein Skadden was counsel to the debtors. Chanin acted as financial advisor to an ad hoc committee of noteholders in Alamosa Holdings, wherein Skadden was counsel to the company. Chanin acted as financial advisor to the TCH noteholder committee, wherein Skadden represented DLJ Merchant Banking in the transaction. Chanin represented the Official Committee of Unsecured Creditors in HQ Global Workplaces; Skadden represented the Debtor. Chanin acted as financial advisor to the Official Creditors Committee of Washington Group International, wherein Skadden was counsel to the Debtor. Chanin acted as financial advisor to the official committee of unsecured creditors for Color Spot, wherein Skadden was counsel to a member of the Official Committee of Unsecured Creditors. Chanin acted as financial advisor to the Official Committee of Unsecured Creditors of RCN, wherein Skadden acted as counsel to the company. Chanin acted as financial advisor to the Official Committee of Unsecured Creditors of Stone and Webster, wherein Skadden was counsel to the company. From 1986 to March 1990, Russ Belinsky, a Senior Managing Director and co-founder of Chanin Capital Partners was an Associate in the Los Angeles office of Skadden.

    *c. Greenhill & Co., LLC ("Greenhill")* Chanin acted as financial advisor to the Secured Lender Steering Committee for Pegasus Satellite Communications, wherein Greenhill was the financial advisor to the unsecured creditors' committee, Chanin acts as the financial. advisor to the equity committee of Loral Space and Communications, wherein Greenhill acts as the company's financial advisor. Chanin acts as financial advisor to the equity committee for Adelphia, wherein Greenhill is the financial advisor to the unsecured creditors committee. Chanin advised the unsecured creditors committee in the Cable and

7

Wireless United States Chapter 11 case, wherein Greenhill represented the Debtors.

*d. Weil Gotshal & Manges LLP ("Weil")* Chanin acts as financial advisor to the Lease Indenture Trustee and Pass Through Trustee for MIRMA, wherein Weil is counsel to the unsecured creditors' committee. Chanin acts as financial advisor to the equity committee for Adelphia, wherein Weil is counsel to Adelphia. Chanin acted as financial advisor to the ad-hoc committee of noteholders in IWO Holdings; Weil represented the company. Chanin acted as financial advisor to the unsecured creditors' committee in Global Crossing, wherein Weil was counsel to the debtors. Chanin acts as financial advisor to the equity committee for Footstar; wherein Weil is counsel to the debtors. Chanin acts as the financial advisor to the equity committee of Loral Space and Communications, wherein Weil represents the company. Chanin acted as financial advisor to Home Interiors and Gifts, wherein Weil was counsel to the company.

*e. Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer")* Wilmer has served as counsel to Verizon in Adelphia, ATX and Global Crossing. Wilmer has served as counsel to Chanin in connection with fee and retention issues in TCH, LEAP, Loral, Borden Chemicals and Atlantic Express. Wilmer serves as counsel to the Floating Rate Noteholders in SatMex; Chanin serves as financial advisor to Ad Hoc Committee of SatMex high yield noteholders.

*The Debtors.* Chanin has not provided any prior services to the Debtors or to their affiliated entities. None of this work was related to the Debtors or their affiliated entities in any way, and many of these engagements have concluded (or are near conclusion).

See doc. # 2186 par 7.

11.  The Victor Supplemental Affidavit further states

Chanin has conducted a revised and exhaustive conflicts search and made diligent due inquiry regarding its connections and relations with the members of the Committee, the Debtors, their board of directors, their creditors of record, their equity shareholders, and the attorneys and accountants of each of the foregoing, the Office of the United States

8

Trustee, and the Honorable Colleen A. Brown to determine whether it has any conflicts of interest or other relationships that might bear on its retention or disinterestedness. Indeed, Chanin has researched its client files and its records that contain relevant information and that have been retained in the normal course of business. Chanin obtained from the Committee the names of certain individuals and entities identified in this paragraph, the "Potential Parties-In-Interest"). To the best of my knowledge, information and belief, and after due inquiry, and except as stated below, neither I, Chanin, nor any professional employee of Chanin has any connection with Potential Parties-In- Interest.

The Victor Supplemental Affidavit did not state that any of the relationships recited in Paragraph 5 of the Victor Supplemental Affidavit constituted "connections" within the meaning of Bankruptcy Rule 2014. To the contrary, Paragraph 4 further stated, "Except as otherwise set forth herein, to the best of my knowledge, Chanin

(i) does not have any connection with the Debtors, the Debtors' creditors, their respective attorneys and accountants or any other party-in-interest (as reasonably known to us),

(ii) pursuant to 11 U.S.C. [s]ection 1103(b), does not represent any other entity having an adverse interest in connection with these cases, and

(iii) is "disinterested" as that term is defined in section101(4) of the Bankruptcy Code."

See doc. # 2186 par 7.

12. Chanin filed a second supplemental disclosure on August 1, 2005 that identified several instances in which members of the former Committee, or retained professionals of the Committee, are involved in cases in which Chanin was recently selected to serve as financial advisor to an ad hoc noteholders' committee for Salton. Chanin did not state that its retention to serve as financial advisor to the Salton ad hoc noteholders' committee constituted a connection or constituted a relationship that might bea on its retention or disinterestedness. See doc. # 2186, par 8, 9.

13. On June 23, 2005, the UST filed an objection to Chanin's third interim fee application, questioning the adequacy of Chanin's disclosures under Rule 2014. The Court entered an

    Order deferring consideration of the subject application and objection until after Chanin filed its final fee application. Chanin filed it final fee application on September 9, 2005, and a supplement thereto on January 19, 2006. The UST filed an objection to the final fee application on February 6, 2006 seeking an order "substantially reducing Chanin's compensation." See doc. # 2186, par. 10 – 12.

14. On April 19, 2005, upon the consent of all parties present, the Court entered an order directing the UST to appoint an examiner in these cases to investigate the following matters:

    a. the transfer of the Debtors' executives' claims, including but not limited to, the claims of Alex Kwader, and other persons who were employees of the Debtors at the time of the transfer of their claim(s), to Silver Point Capital, L.P. ("Silver Point"), the nature and extent of the disclosure of those transfers and whether breach(es) of fiduciary duties to the estate resulted;

    b. the transfer of the claim of former committee member Solutions Dispersions, Inc. to Silver Point;

    c. the quality of the "screening wall" Silver Point, and the other members of the Creditors' Committee, established in accordance with this Court's Order Approving Specified Information Blocking Procedures and Permitting Trading in Securities of the Debtors Upon Establishment of a Screening Wall (doc. # 684) (the "Trading Order"), whether it was breached, and whether the Trading Order was violated;

    d. the dispute among Committee members regarding corporate governance issues and whether any Committee member breached its fiduciary duty to act in the best interest of all creditors; and

    e. any other matter the Examiner deems necessary and relevant to the complete and full investigation of the four enumerated areas included herein.

By order dated April 22, 2005, the Court approved the United States Trustee's selection of Harvey R. Miller as the examiner. On July 11, 2005, the examiner filed his report under seal. The Court ordered the report unsealed with some redactions by order dated August 16, 2005. See doc. # 2186, par. 12.

15. On July 13, 2005, after release of the Examiner's Report, the UST disbanded the Committee. See doc. # 1638.

**DISCUSSION**

*1. Summary Judgment is Proper*

The issue before the Court is whether Chanin's fees should be drastically reduced because it failed to comply with the requirements of Rule 2014, by failing to list all connections it had with parties in interest in this case, and in particular, by failing to disclose all cases in which it had previously been involved where other parties or professionals from the Fibermark cases had also been involved. The Court finds that the parties have stipulated to all facts material to that issue, that there are no material facts in dispute, that summary judgment is proper and that the record is sufficient for the Court to make a determination on the cross-motions for summary judgment as a matter of law.

*2. The Requirements of Rule 2014*

Rule 2014(a) provides

> (a) APPLICATION FOR AN ORDER OF EMPLOYMENT. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. . . . The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountant, the United States trustee, or any person employed in the office of the United States trustee. **The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United Stares trustee, or any person employed in the office of the United States trustee.**

FED. R. BANKR. P. 2014(a) [emphasis added]. Neither party disputes that all professionals appointed in this bankruptcy case were under an obligation to comply with Rule 2014. The issue is what "connections" must be disclosed. The term "connections" is not defined in the Bankruptcy Code or Rules. The case law is consistent in requiring parties to comply with the disclosure requirements of Rule 2014, and punishing parties who fail to comply, but no case has considered whether the deficiency identified by the UST constitutes a failure to meet the requirements of Rule 2014. The UST argues that Chanin's obligation to disclose all connections encompassed an obligation to disclose all cases in which it was involved where a party or professional in this case was also involved, regardless of whether there was any pecuniary or attorney-client or adversarial relationship. There is no case that either party or the Court has located which addresses whether this level of disclosure is envisioned by the Rule.

11

The Rule is very broad and was enacted to implement the appointment of professionals under § 327, § 1103, and § 1114 of the Bankruptcy Code, and in particular to provide a mechanism for ensuring the disinterestedness of such professionals. The questions are how far is it reasonable to assume the rule was intended to go and by what factors, if any, the strict construction of the rule be tempered.

### 3. *The Role of the U.S. Trustee in Monitoring Professionals in Chapter 11 Cases*

Under the Bankruptcy Code, the U.S. Trustee has the duty of "monitoring all applications filed under § 327 of title 11." Thus, it is essential for the U.S. Trustee to police professional appointments pursuant to §§ 327 and 1103 to guarantee the continuing integrity of the bankruptcy system. As Judge Friendly so eloquently stated in In re Ira Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966), "the conduct of bankruptcy proceedings not only should be right but must seem right." In order to maintain the integrity of the bankruptcy process, it is essential for the U.S. Trustee to meet his or her mandatory duty to monitor all applications for professional appointment, and to guarantee that the professionals seeking employment have fully and properly submitted a "verified statement … setting forth the person's connections" to the debtor, creditors and any other party in interest. Fed.R.Bankr.P. 2014(a). Under Rule 2014(a), it is the responsibility of the professionals to affirmatively disclose their connections. While it is not the duty of the U.S. Trustee to seek out connections between professionals seeking employment and parties who have an interest in the bankruptcy case, as the "watchdog" of the bankruptcy process it is proper for the U.S. Trustee to exercise his or her judgment on a case by case basis and to request further detail in the Rule 2014 disclosures when the facts or circumstances of a particular case suggest this to be prudent or necessary.[2]

In this case, on the consent of all parties, the Court appointed an Examiner to investigate allegations of breaches of fiduciary duty by certain professionals, inter-creditor disputes, illegal claims trading and other improper conduct by parties in interest. In light of these allegations and the appointment of an examiner, this case might be designated as one where a greater level of scrutiny of the connections among the professionals, or between the professionals and parties in interest, would be warranted. There is nothing in the record, and no material fact stipulated, to indicate that the U.S. Trustee requested disclosures from Chanin beyond the level of connection Chanin had already provided.

### 4. *The Role of the Court and the Applicant Under Rule 2014*

Courts have an obligation to construe Rule 2014 very strictly because it is the courts' responsibility to determine whether a professional shall be disqualified due to their connection to a party in interest. Diamond Lumber Inc. v. Unsecured Creditors' Committee of Diamond Lumber, Inc., 88 B.R. 773, 777 (N.D. Tex. 1988). "All facts that may be pertinent to a court's determination of whether a

---

[2] Through the administrative aspects of the case, as well as the U.S. Trustee's geographical region jurisdiction, the U.S. Trustee may well be privy to circumstances that affect the level disclosure warranted in a particular case that would not be evident or available to the Court or other parties in interest.

12

professional is disinterested or holds an adverse interest to the estate must be disclosed." In re Haldeman Pipe & Supply Co., 417 F.2d 1302, 1304 (9th Cir. 1969). The decision as to what facts may be relevant should not be left up to the professional, "whose judgment may be clouded by the benefits of the potential employment." In re Lee, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1988). In light of the court's responsibility to approve the employment of professional, the disclosure requirements of Rule 2014(a) are broader than those governing inquiries into disinterestedness under § 327. Leslie Fay Company, 175 B.R. at 536. Code § 327 limits employment of professionals to those individuals who do not hold a interest that is materially adverse to the estate, while Rule 2014 requires professionals to list all "connections" that they may have with a party to the proceeding. Id.

It is the responsibility and duty of the professional, however, and not the court, to make sure all "connections" have been disclosed. Leslie Fay Companies, 175 B.R. at 533. "Absent the spontaneous, timely and complete disclosure required by section 327(a) and Fed.R.Bankr.P. 2014(a), court appointed counsel proceed *at their own risk*." Rome, 19 F.3d at 59. The purpose of Rule 2014(a) is to ensure that all facts relevant to a party's professional qualification are before the court so the presiding judge can determine whether the connections disqualify the applicant or if further inquiry into the matter is required. "The professional's duty to disclose is self-policing." Granite Partners, 219 B.R. at 35. It is not the duty of the court, the U.S. Trustee or any other party to search beyond the 2014(a) disclosure for the existence of connections that a professional seeking to be employed should have disclosed. Full disclose of all connections to a party in interest is the affirmative duty placed on the professional seeking employment. The duty to disclose all possible connections is so vital to the bankruptcy process that failure to do so is an independent basis for the disallowance of fees. See Futuronics Corp., 655 B.R. at 469; Arlan's Dep't Stores, 615 F.2d at 933; In the Matter of Roger J. Au & Son, Inc., 71 B.R. 238, 252 (Bankr. N.D. Ohio 1986); In re Tinley Plaza Associates, L.P., 142 B.R. 272, 278 (Bankr. N.D.Ill. 1992). Thus, professionals who seek appointment owe the duty of complete disclosure of all "connections" that bear upon their eligibility for such appointment.

> 5.  *The Plain Language of the Rule Must be Balanced Against the Importance of Attracting Competent Professionals to Bankruptcy Practice*

The decision by the drafters of the Bankruptcy Rules to use the term "connections" in Rule 2014(a) is indeed "an unfortunate one." 9 L. King, Collier on Bankruptcy, ¶ 2014.05 (15th ed. 2005). It is difficult to comprehend how the drafters intended this to be enforced without any clarification as to the definition of the term, its breadth or the time period covered. As Chanin indicated at oral argument, the bankruptcy bar in the Northeast is a small one, thereby making it more likely than not that those bankruptcy practitioners at the larger firms of that region have all had some form of contact with one

13

another over the course of their careers.[3] The Rule states that "all connections" to the parties in interest must be disclosed. Thus, the UST's interpretation of the plain language of the statute is not unfounded. It can indeed be argued that the "connections" a professional had with entities that are parties in interest in the instant case, by virtue of parallel involvement in other cases, no matter how remote, must be disclosed under Rule 2014.

However, in light of the relatively small community of bankruptcy professionals in each tier of bankruptcy work and the high likelihood of coincident involvement of those bankruptcy professionals, that interpretation could impose an extra and significant burden on applicants, especially with regard to the disclosure of connections to other attorneys and accountants. If the UST's interpretation of the Rule 2014 requirements were adopted, the volume of disclosure, and amount of time required to maintain the records and conduct the case by case investigation, for each appointment could outweigh the benefit of the appointment. Thus, it seems that such an interpretation, if strictly enforced, could have the effect of discouraging qualified professionals from seeking or accepting appointment in bankruptcy cases. This is an important consideration to weigh when assessing how far the net created by the term "connections" should extend. There is historical support for this consideration. When the Bankruptcy Code was enacted and the provisions regarding professional appointment were drafted, Congress made clear that it intended to "provide sufficient economic incentive [to lure competent bankruptcy specialists] to practice in the bankruptcy courts." In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 850 (3d Cir. 1994), citing In re Combs, 751 F.2d 286, 288 (8th Cir. 1984). "The unambiguous policy inspiring § 330(a), expressed most clearly in the House Report accompanying House Bill 8200, H.R. 8200, 95th Cong., 1st Sess. (1977), is that professionals and paraprofessionals in bankruptcy cases should earn the same income as their non-bankruptcy counterparty." Id. If professionals seeking employment in bankruptcy cases are required to disclose every connection, no matter how trivial or remote, the costs of such disclosure could drive qualified professionals out of the bankruptcy practice. Nonetheless, "Rule 2014 disclosure requirements are to be strictly construed." In re The Leslie Fay Companies, Inc., et al., 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); see In the Matter of Arlan's Dep't Stores, Inc., 615 F.2d 925, 933 (2d Cir. 1979); Futuronics Corp. v. Arutt, Nachamie & Benjamin (In the Matter of Futuronics Corp.), 655 F.2d 463, 469 (2d Cir. 1981); In re Rogers-Pyatt Shellac Co., 51 F.2d 988, 922 (2d Cir. 1931). The mandatory disclosure requirements allow courts to make an informed determination of whether the retention of a professional should be approved. In re Granite Partners, L.P., 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998); Rome v. Braunstein, 19 F.3d 54, 59 (1st Cir. 1994).

---

[3] This is even more pronounced in Vermont, where one must presume that the small number of bankruptcy professionals who handle bankruptcy matters will all inevitably deal with each of the other bankruptcy professionals in the state on a regular basis.

A distinction must be made between situations and involvement in other cases that are disclosed just because they could conceivably fit within the broadest definition of connections and those that suggest an appearance of a conflict of interest or lack of disinterestedness. There is no question that any connection that might reasonably be perceived to constitute a conflict of interest, or to support a determination that the applicant is not disinterested, must be disclosed. A professional seeking to be employed in a bankruptcy case should disclose all arguable conflicts, even if it is only to explain them away. See In re etoys, 331 B.R. 176 (Bankr. D. Del. 2005), In re EWC, Inc, 138 B.R. 276 (Bankr. W.D. Okla. 1992),  It is the former category of disclosures that is in question herein.

This Court will weigh an applicant's obligation to disclose connections with other professionals and parties in interest in the case – where such connections are not attorney-client relationships, pecuniary relationships, or adversarial relationships – against the burden that this obligation will impose, on a case by case basis.  It will continue to rely on the U.S. Trustee and other parties in interest to move for additional disclosure when those parties have reason to believe that the additional level of disclosure is warranted to ensure the disinterestedness of all professionals appointed in bankruptcy cases.  When there is any doubt as to whether the disclosure is necessary, the U.S. Trustee, the Court and the applicant should err on the side of caution.  In this regard the Court finds instructive the words of its sister court:

> Therefore, the better practice for Rule 2014 disclosure is to err, if at all, on the side of over-disclosure. Disclosure is the cornerstone of the retention process. The process places a burden upon the applicant to disclose and a burden upon the United States Trustee, and other parties in interest, to raise their concerns in a timely manner. . . .A review of [the movant's] motion reveals that it seeks disqualification of Milbank based upon a failure to disclose--not connections as required under 2014--but a failure to disclose every conceivable interpretation of its connections . . .[The movant's] view of disclosure requirements as seen through its criticism of Milbank would make disclosure under Rule 2014 an impossible task

In re ENRON, (Bankr S.D.N.Y, 2002) 2002 WL 32034346 at 5. While the facts of the Enron matter in question are distinguishable from those at bar, and the UST's interpretation is more founded in sound statutory interpretation than the movant in the cited proceeding, the Court's logic is, nonetheless, applicable.

### 6.  *Chanin's Continuing Obligation to Disclose*

Rule 2014(a) does not expressly require professionals employed by the estate to supplement or continue filing updated disclosure statements throughout their employment.  Professionals employed for the estate however, are under a continuing duty to disclose connections that might bear on the professional's qualification for retention throughout their employment. In re Diamond Mortg. Corp. of Illinois, 135 B.R. 78, 89 (Bankr. N.D.Ill. 1990).  Section 327(a) of the bankruptcy code "implies a duty of continuing disclosure, and requires professionals to reveal connections that arise after their retention."

15

Granite Partners, 219 B.R. at 35. If a professional employed for the estate enters into a relationship that creates a conflict of interest with the estate, that conflict must be disclosed and immediate disqualification is required by § 327(a). In re EWC, Inc., 138 B.R. 276, 282 (Bankr. W.D. Okl. 1992); Tinley Plaza Associates, 142 B.R. at 278. "Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free." Granite Partners, 219 B.R. at 35.

Hence, Chanin had an ongoing obligation to disclose its connections and address factors which might bear on its disinterestedness, for example, when new professionals (such as the examiner or his counsel) were appointed to participate in the case. The UST has raised important questions about whether Chanin met its disclosure obligations in this regard. The Court does not find that the UST has presented sufficient proof to warrant a drastic or substantial reduction in Chanin's fees based on a failure to make continuing disclosures, however, it is a factor the Court will consider when making a final determination on Chanin's pending fee applications.

### 7. *Due Process Considerations*

The UST's request for sanctions raises a due process question. This Court is duty bound to impose sanctions or reduce fees when professionals breach their legal, statutory or ethical obligations. However, it will not do so if the party is not on reasonable notice of those obligations. There is no case law under Rule 2014, or legislative history, that elucidates the definition of "connections" in a way that either supports or refutes the interpretation that the UST urges. The plain language of the statute would support the UST's interpretation but even the UST cannot point to a single instance where this interpretation was argued or adopted. The facts of the instant case are not unique. It is quite typical for a bankruptcy professional who works primarily in chapter 11 cases to have dealt with the other bankruptcy professionals in any particular case, on many previous occasions. In the absence of any proof that the interpretation being pressed by the UST has been imposed in other chapter 11 cases, or that the professionals in this case, and Chanin in particular, was on notice that failure to comply with this very high level of disclosure could result in sanctions, the Court finds the imposition of drastic reductions based upon this newly announced deficiency would be a violation of due process principles. This determination is not tantamount to a finding that the disclosure was adequate or that the UST position is unwarranted, either in general or in this case. It is, rather, a determination that due process rights are paramount and that sanctions will not be imposed for a rule violation against a party who did not have notice of the rule's requirements. Sanctions imposed by that sort of ambush serve no legitimate purpose.

16

## **CONCLUSION**

For the reasons set forth above, the Court finds that there are no material facts in dispute and summary judgment is proper. The Court further finds that Rule 2014 does require professionals appointed in chapter 11 cases to disclose all connections with the debtor, creditors, any other party in interest, as well as the attorneys and accountants for such parties. However, the extent and format of such disclosures may vary from case to case, as the circumstances of each case will define the "connections" that must be disclosed to provide the Court and parties in interest with sufficient information to determine whether the applicant is disinterested. Moreover, any determination of the sufficiency of the disclosures produced pursuant to Rule 2014 should be made by balancing the plain language of the rule's mandate that applicants disclose "all connections," in order to maintain integrity of the professional appointment process in bankruptcy cases, against the common sense analysis of what connections are reasonably defined as pertinent to the ultimate question of disinterestedness, so that competent professionals do not find the requirements of representing parties in bankruptcy cases so burdensome as to deter them from doing so. If an applicant conceals, fails to disclose or mischaracterizes connections that are pertinent to the disinterestedness inquiry, or refuses to produce the more detailed data reasonably requested by the UST, this Court would consider disallowance of all fees to be an appropriate sanction. However, the Court will not retroactively impose this sanction if the applicant did not have notice or a reasonable expectation, that a greater level of detail was required in the instant case.

The UST's motion for summary judgment seeks an Order (a) declaring that Chanin failed to disclose all of its connections and that the disclosures it filed do not satisfy the requirements of Rule 2014, (b) sustaining its objection to Chanin's fee applications, (c) denying a substantial portion of the fees Chanin seeks in it final application because of the Rule 2014 disclosure deficiencies, and (d) denying the fees Chanin seeks for legal services provided to it by Wilmer, Cutler. The Court finds that Rule 2014 may require a level of disclosure that is not inconsistent with the position argued by the UST, but that it is not required in every case, and though it would not have been inappropriate for the UST to seek this greater level of disclosure in this case, from all professionals, there is nothing in the record to demonstrate that the UST put Chanin on notice that it was seeking this greater scope of connections to be disclosed. Accordingly, under the circumstances of this case the Court find it would be unjust to drastically reduce Chanin's fees to punish it for not providing greater disclosure of its connections to the parties and professionals in this case. The Court will take under advisement the arguments that the UST has presented in connection with the fees Chanin seeks in connection with the legal services it obtained from Wilmer Cutler, and will analyze those services by reference to the standard of reasonableness and benefit to the estate. In sum, the Court grants the UST motion to the extent it seeks a determination that 2014 may require a greater level of disclosure of connections than Chanin provided here, denies the motion to

the extent it seeks a "drastic reduction" in Chanin's fee due to a violation of Rule 2014, and takes under advisement that portion of the motion that seeks a disallowance of all fees Chanin seeks for Wilmer Cutler legal services.

The Chanin cross-motion for summary judgment seeks an Order (a) overruling the UST's objection to its fee applications and (b) awarding Chanin the full amount of fees it seeks in the third and final fee applications, as modified. The Court grants that aspect of the cross-motion that seeks to have the UST's request for a drastic reduction of Chanin's fee on Rule 2014 grounds denied, and defers a determination on the balance of the cross-motion until after it has considered all evidence to be presented in support of the Debtors' outstanding objection to Chanin's fee applications and conducts an independent analysis of the subject fee applications

This constitutes the Court's findings of fact and conclusions of law.

March 11, 2006  
Rutland, Vermont

/s/ Colleen A. Brown  
Colleen A. Brown  
United States Bankruptcy Judge