*Formatted for Electronic Distribution*                                    *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

**In re:**
**FIBERMARK, INC.,**
**FIBERMARK NORTH AMERICA, INC., and**                    **Chapter 11 Case**
**FIBERMARK INTERNATIONAL HOLDINGS, INC.,**              **# 04-10463**
                              **Debtors.**                **Jointly Administered**

_____

Filed & Entered
On Docket
06/30/06

**MEMORANDUM OF DECISION**
**GRANTING, IN PART, CHANIN CAPITAL PARTNERS, LLC'S FINAL APPLICATION**
**FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

On September 9, 2006, Chanin Capital Partners LLC ("Chanin"), as financial advisor and investment banker for the former Official Committee of Unsecured Creditors of the Debtors (the "Former Committee"), filed its final application for allowance of compensation and reimbursement of expenses for services rendered during the period from April 7, 2004 through July 31, 2005 (doc. # 1882) ("Chanin's Final Application"). The United States Trustee ("U.S. Trustee") filed an objection to Chanin's Final Application, asserting that Chanin's fee request should be reduced significantly based upon a failure to disclose certain relationships (doc. # 2121). Chanin and the U.S. Trustee filed cross motions for summary judgment on the alleged disclosure defect. The Court denied summary judgment and overruled the U.S. Trustee's objection to the extent that the U.S. Trustee sought to have either all or a substantial portion of Chanin's fees disallowed (docs. ## 2200 and 2201) based upon the alleged violation of Bankruptcy Rule 2014's disclosure requirements. However, the Court granted summary judgment for the U.S. Trustee to the extent the U.S. Trustee sought a determination that Rule 2014 could require disclosure of the types of connections at issue in the instant case, when there was proper notice of the disclosure obligation. The Court took under advisement that portion of the motion that sought a disallowance of reimbursement for all fees for legal expenses Chanin paid to Wilmer Cutler Pickering Hale & Dorr ("Wilmer Cutler").

The Reorganized Debtors also filed an objection to Chanin's Final Application. The Reorganized Debtors contend that Chanin should be denied all compensation for its services to the Former Committee because (a) Chanin was not a "disinterested person" based in large part upon relationships it had with certain members of the Former Committee, and (b) the Examiner had found that certain members of the Former Committee breached their fiduciary duties to creditors (doc. # 2122). The Reorganized Debtors also emphatically objected to Chanin's request for a deferral fee, arguing that the plan which was ultimately confirmed by the Court was not filed until after the Former Committee had been disbanded, and therefore, Chanin, as a professional of the Former Committee was ineligible for the deferred fee. The Court considered evidence on Chanin's Final Application, and these objections, on March 14 -15, 2006.

For the reasons set forth below, the Court (i) grants Chanin's Final Application in part; (ii) denies Chanin's Final Application in part; (iii) sustains the U.S. Trustee's objection for the reimbursement of legal expenses Chanin paid to Wilmer Cutler; (iv) sustains the Reorganized Debtors' objection to Chanin's request for the deferred fee; and (v) overrules all other outstanding objections.

## PROCEDURAL BACKGROUND

On March 30, 2004 (the "Petition Date"), the Debtors filed voluntary petitions in this Court under chapter 11 of the Bankruptcy Code (doc. # 1).  The cases were jointly administered pursuant to orders dated March 30, 2004 (doc. # 23).  On April 7, 2004, the U.S. Trustee appointed the members of the Former Committee (doc. # 65).  On May 7, 2004, the Former Committee filed an application to retain Chanin, which included a proposed engagement letter (doc. # 216).  The engagement letter contemplated two components of compensation for Chanin: first, a monthly fee of $100,000 throughout Chanin's engagement and, second, a deferred fee, to be calculated upon the conclusion of the case, for its work on the plan (the "Deferred Fee").  Under the terms of the engagement letter, the Debtors would also reimburse Chanin for its reasonably incurred expenses (Id.).

On June 14, 2004, the Court authorized Chanin's retention under the terms of a revised engagement letter, subject to the requirement that Chanin seek Court approval of all fees paid and all expenses reimbursed (doc. # 338).

On December 17, 2004, the Debtors filed a proposed plan of reorganization (the "Original Plan") (doc. # 878).  The Debtors and the Former Committee supported the Original Plan, recommended that the Debtors' creditors vote in favor of the Original Plan, and asked the Court to approve the Original Plan (doc. # 1095).  However, due to a dispute among the Former Committee members, the Debtors subsequently filed a notice of intent to withdraw the Original Plan if certain disputes were not resolved (docs. ## 1025, 1051), and on March 21, 2005, the Debtors withdrew the Original Plan (doc. # 1332).

As a result of the dispute among certain members of the Former Committee, and various allegations asserted against a number of parties and professionals, the Court appointed an Examiner to investigate specific allegations and make recommendations (doc. # 1427).  At the direction of the Court, the Examiner conducted a comprehensive investigation into potential breaches of duty by members of the Former Committee, the Debtors and various professionals.  The Examiner's investigation culminated in a report filed with the Court on July 8, 2005 (the "Examiner's Report") (doc. # 1623).  The Examiner opined that certain parties had breached their duties and recommended penalties.  Shortly thereafter, on July 13, 2005, the U.S. Trustee disbanded the Former Committee (doc. # 1638).

On June 23, 2005, the Debtors filed a "Disclosure Statement with Respect to Amended Joint Plan of Reorganization Under Chapter 11, Title 11, United States Code of FiberMark, Inc. et al, Debtors" and a related "Amended Joint Plan of Reorganization."  (docs. ## 1578 and 1579) (the "First Amended Plan").

The First Amended Plan was revised significantly following the unsealing of the Examiner's Report to include, *inter alia*, a summary of the Examiner's Report and various responses thereto, and provisions designed to implement the Examiner's opinions and his recommendations for penalties.  Ultimately, the Debtors restructured the Amended Plan to include a constituency settlement that addressed many of the Examiner's conclusions.  The near final version of the amended disclosure statement and plan were filed on October 20, 2005 (docs. # 1966 and 1967) and, with certain modifications, were approved by the Court on October 27, 2005 (the "Approved Plan").  The Approved Plan and its corresponding disclosure statement were filed with the Court on November 1, 2005 (docs. # 1996 and 1997).  The Approved Plan was confirmed by the Court on December 5, 2005 (doc. # 2057) and became effective on January 3, 2006 (doc. # 2084).

Chanin has filed three interim fee applications (docs. ## 532, 891, 1435).[1]  No party objected to Chanin's First or Second Interim Fee Applications.  The U.S. Trustee objected to Chanin's Third Application (doc. # 1572) and the Court deferred consideration of Chanin's Third Application and the objection until after the filing of Chanin's Final Application (doc. # 1676).  On September 9, 2005, Chanin filed its Final Application requesting a final allowance of total monthly fees for professional services rendered in the amount of $1,521,935.48 and requesting reimbursement of expenses in the total amount of $128,198.95 (doc. # 1882).  Additionally, Chanin sought a Deferred Fee in the amount of $407,386, explaining that the amount of the deferred fee was extrapolated from the 62% distribution to be paid to creditors pursuant to the terms of the approved Disclosure Statement (doc. # 2098).

**DISCUSSION**

**A.      The Reorganized Debtors' Objection**

The Reorganized Debtors objected to Chanin's Final Application on a number of grounds.  First, the Reorganized Debtors argue that Chanin violated its disclosure obligations under §327 and Fed. R. Bankr. P. 2014(a).  In its argument, the Reorganized Debtors adopt and incorporate by reference the objection filed by the U.S. Trustee (doc. #2122 p.2).  For the reasons set forth in the Court's Memorandum and Order addressing the U.S. Trustee's motion for summary judgment on this issue, the Court overrules the Reorganized Debtors' objection to the extent that it seeks to have all or a substantial amount of Chanin's fees disallowed based upon this alleged failure to disclose certain connections (docs. ## 2200 and 2201).

---

[1] Chanin's First Application sought $280,000 for professional services rendered and $27,001.23 for reimbursement of expenses (doc. # 532).  The Court approved Chanin's First Application to the extent of $280,000 for professional services rendered and $25,693.05 in expenses (doc. # 645).  Chanin's Second Application sought $400,000 for professional services rendered and $47,028.98 for reimbursement of expenses (doc. # 1176).  The Court allowed $400,000 in fees and $34,410.27 for expenses (doc. # 1176).  The Court has not yet ruled on Chanin's Third Application.  Chanin explicitly requests approval of the fees and expenses incurred during the third application period in Chanin's Final Application.  Therefore, the Court rules on that herein.

The Reorganized Debtors also claim that Chanin's Final Application should be disallowed because, as a result of its relationship with AIG, Chanin is not a "disinterested person" under the Bankruptcy Code. The Reorganized Debtors argue that by virtue of Chanin's relationship with AIG, Chanin breached its fiduciary obligations to the Former Committee and to the creditor body. In particular, the Reorganized Debtors assert that Chanin contributed to an adversarial relationship between the Former Committee and the Debtors, withheld information from the Former Committee that the Reorganized Debtors had intended for all Former Committee members, and made recommendations that were inconsistent with the interests of the unsecured creditor body as a whole (but consistent with the interests of some Former Committee members, namely AIG) (doc. # 2122, p. 4). According to the Reorganized Debtors' argument, Chanin, at the behest of Mr. Musante of AIG, furthered the lack of communication by and among members of the Former Committee and those between the Former Committee and the Debtors. The Reorganized Debtors attempt to portray Chanin as "controlling and selectively editing the flow of information to the Committee" as Mr. Musante desired (Id. at p. 8). The Reorganized Debtors essentially argue that a conspiracy existed between AIG, Post and Chanin to withhold information from Wilmington Trust. However, no representative from Wilmington Trust testified in support of this argument.

The Court is not persuaded by this argument. Although it appears to be true that every member of the Former Committee did not receive every single communication from Chanin, the record demonstrates that Chanin regularly communicated with the entire Former Committee. The Court finds that Chanin failed to keep Wilmington Trust fully informed at all times, however, there is no admissible evidence in the record that Chanin intended or spear-headed any conspiracy to withhold significant information from Wilmington Trust or any other Former Committee member. The Reorganized Debtors have not presented sufficient admissible evidence to warrant a determination in their favor on this aspect of their objection.

The last component of the Reorganized Debtors' objection is that Chanin's professional services did not benefit the estate. In support of this point they assert that because Chanin had conflicting loyalties, Chanin was not able to effectively fulfill its fiduciary obligations to the Former Committee or the creditors it represented. Although the conclusions of the Examiner are part of the record in this contested matter, see doc. # 2194, the Examiner's conclusions that counsel to the Former Committee breached their fiduciary duties by acting at the behest of AIG cannot be extrapolated to apply to Chanin, or be imputed to Chanin without specific evidence to demonstrate an actual breach of duty. The Court finds the testimony of Peter Corbell credible. Mr. Corbell testified that generally, based upon his fairly extensive experience in dealing with chapter 11 cases, different members of a creditors' committee will have different interests and that Chanin therefore talks through various issues with individual members before communicating with the committee as a whole. Chanin followed that practice in the instant case.

4

The Reorganized Debtors presented no evidence that Chanin took direct orders from AIG or that Chanin placed AIG's interests above that of other creditors.  The record before the Court does not support a finding that Chanin breached its fiduciary duties to the Former Committee, or the creditor body which it represented, through its course of dealings with AIG.

### B.    Fees for Professional Services Rendered

The salient criteria this Court applies when considering fee applications is set forth in 11 U.S.C. §330 and In re S.T.N. Enterprises, Inc., 70 B.R. 823 (Bankr. D. Vt. 1987).  The Court hereby allows all interim fees approved to date.[2]  Currently pending before the Court for consideration are the fees sought in Chanin's Third Application and the remaining fees in Chanin's Final Application.

Chanin's Third Application seeks allowance of fees in the amount of $400,000 for professional services rendered and the reimbursement of expenses in the amount of $25,479.41for the time period from November 1, 2004 through February 28, 2005 (the "Third Application Period").  Chanin's Final Application not only seeks allowance for those fees already approved by the Court, but also seeks allowance of fees in the amount of $441,935.48 for professional services rendered[3] and the reimbursement of expenses in the amount of $42,616.22 for the time period from March 1, 2005 through July 13, 2005 (the "Fourth Application Period") plus a deferred fee, for its role in creating the structure and strategy that Chanin posits was integrated into the Approved Plan, in the amount of $407,386.

THE COURT FINDS the professional fees earned during the Third Application Period and the Fourth Application Period to be fully and properly compensable.  Specifically, the Court finds the services rendered by Chanin were reasonable, necessary and of benefit to the estate, pursuant to 11 U.S.C. § 330(a).  See also  In re JLM, Inc., 210 B.R. 19, 24 (2d Cir. BAP 1997).  Accordingly, the Court allows in full the professional fees sought in connection with services rendered by Chanin during these periods.

### C.    Reimbursement of Expenses

THE COURT FURTHER FINDS that since Chanin has failed to provide sufficient detail with regard to certain of the expenses for which it seeks reimbursement, the Court cannot determine whether those expenses are actual, necessary and justified.  See 11 U.S.C. § 330(a); S.T.N. Enterprises, 70 B.R. 823, 836 (Bankr. Vt. 1987); In re Fibermark, No. 04-10463, *4 (Bankr. Vt. filed Nov. 29, 2004)(doc. # 783); In re Fibermark, No. 04-10463, *10 (Bankr. Vt. filed Oct. 22, 2004)(doc. # 698); In re Fibermark, No. 04-10463, *2-3(Bankr. Vt. filed Sept. 30, 2004) (doc. # 645).  Under the facts and circumstances of this case, the Court has allowed reimbursement for certain costs related to out-of-state professionals' meals.  In re Fibermark, No. 04-10463, *2-3(Bankr. Vt. filed Sept. 30, 2004) (doc. # 645).  However, the

---

[2] See fn 1.
[3] Chanin claims it has made a voluntary reduction of $100,000 in the amount of fees to which it is entitled based upon language in the revised engagement letter that provides Chanin with 30 days' notice prior to termination of the engagement.  The Court makes no determination as to whether Chanin's voluntary reduction constitutes an actual reduction.

*quid pro quo* for such allowance is that the professional must demonstrate that the requested expenses are actual, reasonable, necessary and justified. Throughout the course of this case, Chanin has requested reimbursement for meal expenses. While some of the entries appear to be actual and reasonable, there are others which appear to be flat fees of some sort, e.g. $10.00 for lunches and $20.00 for dinners. Given that various other entries specify the meal expense to the penny (i.e., $15.22, $9.07), these round numbers appear to be a per diem allowance for meals rather than the actual amount spent on lunches or dinners. Consequently, the Court finds that Chanin has failed to meet its burden with respect to these requests for reimbursement for meal expenses. Accordingly, the Court disallows reimbursement for the following meal related expenses: $1,995 for meals included in Chanin's First Application;[4] $1,700 for meals included in Chanin's Second Application;[5] $1,380 for meals included in Chanin's Third Application;[6] and $740 for meals included in Chanin's Final Application.[7]

The Court approves reimbursement of all other expenses previously awarded in connection with Chanin's First Application and Chanin's Second Application.

The Court FURTHER FINDS that since Chanin has failed to provide sufficient detail with regard to certain travel related expenses in Chanin's Third Application and Chanin's Final Application, the Court cannot determine whether these expenses are reasonable and justified. There is no explanation why airfare to Los Angeles and hotel expenses in Los Angeles are justified in this case, given that the Debtor is a Vermont corporation and Chanin's principal office for the professional involved in this case is located in New York. In the absence of any justification for these expenses, the Court denies Chanin reimbursement of the $5,865.12 sought for travel to, and the hotel in, Los Angeles.

The Court FURTHER FINDS that since Chanin has failed to provide sufficient detail with regard to certain cell phone and telephone expenses totaling $3,818.54, the Court cannot assess their eligibility for reimbursement and most critically, cannot distinguish them from overhead expenses. As articulated in S.T.N. Enterprises, those expenses which are incurred day-to-day by a professional, regardless of whom the professional represents, are considered "overhead expenses" and are categorically not reimbursable from the estate. 70 B.R. at 844. By contrast, if the applicant provides information relating to such charges that demonstrates and justifies that the expenses generated a benefit to the estate, the expenses may be reimbursed. Id. Chanin identifies certain expenses as "current long distance provider" for the Los Angeles or New York offices. Given that Chanin delineates various conference calls related to the case, the lack of information provided makes it impossible to distinguish them from overhead expenses. Therefore, the Court denies reimbursement for these cell phone and telephone charges.

---

[4] Chanin's First Fee Application contained 80 dinners at $20.00 each; 3 at $40.00 each; 1 at $35.00; 3 at $10.00; 18 lunches at $10.00 each; and one lunch at $30.00. The Court previously disallowed one dinner for $70.00.
[5] Chanin's Second Fee Application contained 79 dinners at $20 each and 12 lunches at $10.00 each.
[6] Chanin's Third Fee Application contained 59 dinners at $20.00 each; 3 at $10.00 each; and 17 lunches at $10.00 each.
[7] Chanin's Final Application contained 32 dinners at $20.00 each; 2 at $35 each; and 3 lunches at $10.00 each.

THE COURT FURTHER FINDS that Chanin is not entitled to reimbursement of the $1,866.10 it seeks for legal services. First, when considered with additional requested legal fees allowance of these fees would cause Chanin to exceed the monthly cap set forth in the revised engagement letter. Second, the legal services in question were provided by Wilmer Cutler, a law firm that has served as special counsel to the Debtors in this case. As a penalty for Chanin's failure to disclose its connection to parties-in-interest, as required by FED. R. BANK. PRO. 2014, the Court denies reimbursement of legal fees Chanin paid to Wilmer Cutler. Likewise, it would be wholly inappropriate for the Reorganized Debtors to be required to reimburse Chanin for the $23,113.90 it paid for legal services provided by Vinson & Elkins to address "fee app obj; supplemental disclosure." The objections to Chanin's Third Application and Chanin's Final Application concentrate on Chanin's failure to disclose its connections with parties-in-interest. Chanin has not provided any detail or justification for allowance of these legal expenses. Consequently, the Court also denies Chanin's request for reimbursement of legal fees it paid to Vinson & Elkins in the amount of $23,113.90.

THE COURT FURTHER FINDS that the remaining $87,720.29 sought for reimbursement of expenses incurred throughout Chanin's engagement to be reasonable, necessary and justified. Accordingly, the Court approves reimbursement of these expenses.

### D. The Deferred Fee

The compensation structure for Chanin involved a monthly advisory fee and a deferred fee. According to the testimony presented, the Deferred Fee was to provide an incentive for Chanin to formulate a plan that would generate a recovery for creditors in excess of 50 percent. (March 14, 2006 Tr. 48). Chanin supplemented its final fee application to include a calculation of the Deferred Fee in this case (doc. # 2098). Chanin seeks an award of $407,386 as its Deferred Fee.

Chanin asserts that despite the disbanding of the Former Committee on July 13, 2005, it is entitled to a deferred fee for the Approved Plan because the Approved Plan is substantially similar to the Original Plan which reflected its efforts and work product. Chanin submits that its work was fundamental to the formulation of the Approved Plan and specifically, that its analysis of the appropriate capital structure was a cornerstone of the Approved Plan. Chanin relies upon the following language in the revised engagement letter (the "Agreement") to support its claim for a deferred fee:

> 2. Term of Agreement. …Additionally, if this Agreement is terminated, Chanin shall be entitled to payment of the Deferred Fee (as defined herein) if a Restructuring Transaction is consummated within 12 months of the effective date of such termination.

The Court addresses the Chanin demand for a Deferred Fee through a series of three inquiries: first, is the Approved Plan a "restructuring transaction" for purposes of the Agreement; second, was Chanin's work integral to the subject restructuring transaction; and third, if these criteria are established, what is the amount of the Deferred Fee the Reorganized Debtors should pay Chanin.  The Agreement defines as a "financial restructuring transaction consummated though a Chapter 11 case" (¶ 1).  Hence, there is no question the Approved Plan qualifies as a restructuring transaction which could give rise to an obligation to pay Chanin a Deferred Fee.

The Agreement also contains a definition of Deferred Fee that specifies how the amount of the fee will be calculated, and the Court heard much testimony about the calculation of the Deferred Fee. Interestingly though, there is little guidance in the Agreement, and no consensus between the Parties, as to what objective criteria that should be used to determine whether Chanin's efforts or work product were sufficiently valuable to the subject restructuring transaction to warrant payment of the Deferred Fee to Chanin. In the absence of specific benchmarks for measuring the extent and value of Chanin's contribution to the subject restructuring transaction, common sense must be our guide. Clearly, the purpose of such an incentive in a fee agreement is to encourage the professional to work toward a resolution that will benefit the many constituent groups involved and to ensure that the professional is paid for such efforts, even if the transaction is not consummated until after the professional's employment is concluded. In essence, if the ultimate transaction would not have occurred but for the professional's contributions then the professional is entitled to a deferred fee.  In this particular instance, the Court finds that in order for Chanin to be entitled to a Deferred Fee, Chanin must demonstrate that the Approved Plan contains provisions that were formulated by Chanin specifically for this particular debtor's reorganization, or that Chanin made a significant contribution to critical aspects of the Approved Plan.  To allow a Deferred Fee regardless of whether Chanin participated or played any significant role in the restructuring that was actually implemented would result in a windfall to Chanin that cannot be justified under § 330, or reconciled with this Court's independent obligation to protect the estate from overreaching professionals.  In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D. N.Y. 1997).  Chanin has failed to carry this burden of proof because the most credible expert evidence, and the record, indicates that the Approved Plan was significantly different from the Original Plan.  For example, the Approved Plan had (i) a new set of financial projections, (ii) a drastically different capital structure due to the Debtors' prolonged bankruptcy proceeding and a weaker operating business after the inter-creditor dispute, and (iii) a different method of distributing funds to creditors.  Additionally, the Approved Plan incorporated a constituency settlement that arose out of a resolution of the findings contained in the Examiner's Report and that was negotiated after Chanin's involvement had terminated.  The Approved Plan also contained a different revolving exit facility that had different covenants and terms which had to be renegotiated based

8

upon the circumstances of the debtors at that time, namely, taking into account the inter-creditor dispute and the weaker business operations.  These negotiations all took place after the Former Committee was disbanded and neither Chanin nor any professional or member of the Former Committee was involved. The Court concludes that Chanin has not demonstrated that its efforts or work product specifically led to, or were a critical element of, the Approved Plan.  Accordingly, based upon the record before it, the language of the Agreement, and the Court's duty to deny any fees that are not reasonable and justified, the Court finds that Chanin is not entitled to the Deferred Fee.

Since the Court finds Chanin has not earned a Deferred Fee, it need not address the proper formula for calculating the Deferred Fee.

Consequently, the Court holds that, under the facts and circumstances of this case, Chanin has not earned a Deferred Fee.

## CONCLUSION

For the reasons set forth herein, the Court grants in part, and denies in part, the Fourth and Final Application of Chanin Capital Partners LLC for Final Allowance of Compensation and for the Reimbursement of Expenses for Services Rendered.  The Court specifically denies Chanin's request for a Deferred Fee under the revised engagement letter.

This constitutes the Court's findings of fact and conclusions of law.

_Colleen A. Brown_____

June 30, 2006                                                   Colleen A. Brown
Rutland, Vermont                                          United States Bankruptcy Judge