*Formatted for Electronic Distribution*                                    *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket

09/06/06

**In re:**
**FIBERMARK, INC.,**
**FIBERMARK NORTH AMERICA, INC., and**          **Chapter 11 Case**
**FIBERMARK INTERNATIONAL HOLDINGS, INC.,**     **# 04-10463**
                                    **Debtors.**  **Jointly Administered**

## MEMORANDUM OF DECISION
### ALLOWING, IN PART, THE FINAL APPLICATIONS FOR FEES AND EXPENSES OF:
### (1) SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP,
### (2) OBUCHOWSKI & EMENS-BUTLER,
### (3) WILMER CUTLER PICKERING HALE & DORR LLP,
### (4) KPMG, LLP, AND
### (5) WEISER, LLP

Prior to determining fees in this case, the salient criteria this Court had applied when considering fee applications were those set forth in In re S.T.N. Enterprises, Inc., 70 B.R. 823 (Bankr. D. Vt. 1987) (Conrad, J.) ("S.T.N."), and §330.[1]  Throughout the administration of the Debtors' estate in this case, the Court has revisited, expanded, and in some instances, overruled certain of the criteria set forth in S.T.N. due in large part to the 1994 revisions to the Bankruptcy Code, and developments in technology and local practice over the course of the last nineteen years.  In the interest of judicial economy, and consistent application of the enunciated principles governing allowance of professional fees in this District, the Court addresses the Final Applications[2] for allowance of professional fees and reimbursement of expenses in this memorandum of decision and catalogues the Court's reiteration, expansion, modification, and overruling of the S.T.N. standards.

---

[1] Unless otherwise indicated, all statutory references herein are to the United States Bankruptcy Code (the "Code"), currently in force.  Although this case was commenced prior to the effective date of the Bankruptcy Abuse and Consumer Protection Act ("BAPCPA"), the changes to the pertinent sections of the Code, namely § 330, were nominal and not pertinent to the Court's ruling herein.  Accordingly, the Court refers to the current version of § 330.

[2] For ease of reference, the following applications are referred to collectively herein as the "Final Applications": Fifth Interim Application of Skadden, Arps, Slate, Meagher & Flom, LLP for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred (July 1, 2005 through January 3, 2006) and Final Application of Skadden, Arps, Slate, Meagher & Flom, LLP for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred (March 30, 2004 through January 3, 2006) (doc. # 2166); Application for Fourth and Final Allowance for Compensation and Reimbursement of Expenses of Obuchowski & Emens-Butler, Attorneys to Debtor in Possession (March 30, 2004 through January 3, 2006) (doc. # 2168); Fifth (July 1, 2005 – January 3, 2006) and Final (March 30, 2004 – January 3, 2006) Fee Application of Wilmer Cutler Pickering Hale and Dorr, LLP for Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Debtors (doc. # 2169); Fourth Interim and Final Fee Application of KPMG, LLP as Auditors and Providers of Certain Accounting, Tax and Employment Benefit Services for Compensation and Reimbursement of Expenses During the Application Period (doc. # 2209); and Final Fee Application of Weiser LLP, Restructuring Accountant for the Debtors, for Compensation for Professional Services Rendered and Reimbursement of Expenses for the Period March 1, 2004 through December 31, 2005 (doc. # 2167).

FEE APPLICATION CONSIDERATIONS

Under §330(a)(1)(A), an attorney or other professional (hereinafter "professional") is entitled to reasonable compensation for actual, necessary services rendered. A paralegal or other paraprofessional is likewise eligible to be compensated from the estate, subject to the same scrutiny as that of a professional in the case. S.T.N., 70 B.R. at 842. There is an inherent public interest that must be considered in awarding fees in a bankruptcy case. Senate Report No. 95-989, 95th Congress, 2d Session 40 (1978). U.S. Code Cong. & Admin. News 1978, p.5787. Accordingly, the Code imposes upon this Court a supervisory obligation not only to approve the employment of professionals, but also to ensure that the fees sought by those professionals in a bankruptcy case are reasonable, and that the services and expenses were actually and necessarily incurred. §§ 327–330.[3] Notwithstanding the absence, or the compromise, of any objection to a pending fee application – or the affirmative consent of the United States Trustee – this Court has an independent judicial responsibility to evaluate the appropriateness of the fees and expenses requested. § 330(a)(3) and FED. R. BANKR. P. 2016 and 2017; S.T.N., 70 B.R. at 831; In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002). This responsibility is especially acute since the professionals seek compensation out of a bankruptcy estate. S.T.N., 70 B.R. at 832. The rationale for the bankruptcy court's independent duty to review fee applications has been described as "a duty to … protect the estate 'lest overreaching...professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.'" In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D. N.Y. 1997).

The Bankruptcy Reform Act of 1994 clarified many of the judicial standards and practices regarding the allowance of professional fees. Ferrara & Huntman v. Alvarez (In re Engel), 124 F.3d 567, 572 n. 10 (3d Cir. 1997). The 1994 modifications to § 330 retained the language of the 1978 Code authorizing compensation for "actual necessary services rendered" but also codified standards for determining whether compensation to be awarded is reasonable and necessary. The current form of §330 provides that a court may award to a trustee, a consumer privacy ombudsman appointed under §332, an examiner, an ombudsman appointed under §333, or a professional person employed under §§327 or 1103:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

---

[3] As a preliminary matter, a professional who renders services to the debtor or a creditors' committee must have the prior approval of the Court under §§ 327(a) and 1107(a) and FED. R. BANKR. P. 2014(a). In re Keren Ltd. Partnership, 189 F.3d 86, 88 (2d Cir. 1999). Compensation for services rendered without the Court's approval or prior to the retention date established by the Court is not compensable from the estate under § 330.

Pursuant to §330(a)(2), "the court may… award compensation that is less than the amount of compensation that is requested." In turn, §330(a)(3) provides:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including-
>> (A)    the    time    spent    on    such    services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this                                         title;
>> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience    in    the    bankruptcy    field;    and
>> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

However, the statute further provides under § 330(a)(4)(A):

> [T]he court shall not allow compensation for-
> (i) unnecessary duplication of services; or
> (ii) services that were not-
>> (I) reasonably likely to benefit the debtor's estate; or
>> (II) necessary to the administration of the case.

The Court applies §330 to the Final Applications before it, taking into account the principles enunciated in S.T.N. and local practice within this District.


## I. FEES

### A.  Content of Fee Application, Generally

A professional who applies for compensation in a bankruptcy case bears the burden of proving the reasonableness of the fees.  In order to be compensated from the estate, the professional must demonstrate – not just recite – that the fees sought are reasonable, necessary, and of benefit to the estate and that the expenses sought to be reimbursed are actual and necessary and that no other reasonable, less expensive alternatives were available. In order to sustain this burden, the applicant must present a carefully detailed application and supporting documentation. S.T.N., 70 B.R. at 832.  To be compensated from a bankruptcy estate, the applicant must "conscientiously set forth the hours expended on each task and the nature of the services rendered at a level of specificity that would allow [the Court] to evaluate the application."  Id.

Hence, an application for fees must clearly identify each discrete task billed to the estate, indicating the date the task was performed, the precise amount of time spent, by whom the task was performed and that person's hourly rate. Id. In order for the Court to ascertain whether the actual time spent is reasonable, at the very least, each application must include a specific analysis of each task for which compensation is sought and the time records must be scrupulously accurate, not to be billed in increments greater than one-tenth of an hour. Id. When different services or tasks are lumped together, the Court cannot determine whether the time allotted for each is reasonable. Consequently, this Court will summarily disallow time for discrete legal services merged together in the application for fees. Id. The application must clearly identify the person performing each activity and the person's position, whether senior partner, junior partner, associate, law clerk, paralegal or other staff. Information about each person's experience, particularly in bankruptcy cases, is a critical factor in determining whether the customary hourly rate is reasonable. Id at 833.

   B. *Reasonableness of Fees*

S.T.N. measured reasonable compensation by considering the cost of comparable services in the community. The Court overrules S.T.N. in this respect. The Court is not bound by local community prices in determining whether a professional's compensation should be allowed under the Code. Section 330(a)(3)(F) specifically bases reasonable compensation upon "the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." When this Court analyzes applications seeking payment of fees from a chapter 11 bankruptcy estate, it strives to balance the fiduciary obligation of a debtor to spend its limited assets in a judicious fashion so as to maximize the ultimate distribution to its creditors against the importance of compensating the professionals who advise the chapter 11 debtor fairly, so as to encourage competent and experienced professionals to continue to participate in chapter 11 cases. It is a tautology that without competent and experienced advisors, debtors-in-possession would have little likelihood of success in their reorganization efforts. It is in the best interest of the estate to compensate professionals commensurate with their expertise and the benefit their efforts yield to the estate. Therefore, in certain circumstances, the Court may approve the retention and compensation of professionals that charge a greater amount than is common in this District, so long as the professional's billing rate is comparable to fees and rates charged by comparably skilled professionals in non-bankruptcy cases.

   C. *Meetings and Correspondence Among Multiple Professionals*

In order to enable the Court to determine whether the time expended is reasonable, S.T.N. requires entries such as meetings, conferences, correspondence and telephone calls identify the participants, describe the substance of the communication, explain its outcome, and justify its necessity. Id. at 833. This basic premise remains unchanged. However, this Court has determined that when a professional

seeks compensation for meetings and conferences among multiple professionals, such as internal meetings and conferences, the professional must demonstrate the benefit the estate and document consistent amounts of time by all participants.  For example, when an application seeks compensation for a conference among three professionals, it must reflect the time spent in the conference as the same amount for each of those three professionals or set forth an explanation for any differential.  If the amount of time one of the professionals spent is not consistent with other meeting participants' time, the application is deficient and the question is raised as to whether the compensation requested by *any* of the meeting participants is reasonable.  Further, since the Court decided S.T.N., the use of electronic methods of communication, including electronic mail, has become commonplace.  When a professional seeks compensation for time spent reviewing or sending correspondence via electronic mail, the professional must also identify the participants, describe the substance of the communication, explain its outcome and justify its necessity, just as the professional would be required to do with respect to "paper" correspondence under S.T.N.

D.  *Use of Various Levels of Professionals and Paraprofessionals*

When determining whether requested fees are reasonable, the Court considers the various levels of professional expertise as an integral prong of the reasonableness inquiry.  The Court specifically considers whether the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate.  Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.

In the absence of an explanation of why a particular professional or paraprofessional's skills are necessary, the time they spend on administrative activities is not compensable.  S.T.N., 70 B.R. at 838. Administrative activities include tasks such as mailing or delivering papers; photocopying; word processing, including but not limited to creating templates, adding pages to various stipulations, formatting, creating spreadsheets, scanning and saving files into the firm's computer system, creating and revising charts, inserting case numbers into orders and printing documents; organizing files; maintaining an internal calendar; checking for docket updates; updating a master service list; creating, organizing, updating and indexing binders; pulling precedent pleadings requested by an attorney; and making travel arrangements. Duties appropriate for office staff are considered part of a professional's overhead expenses and may not be billed to the estate.  Id.  This includes secretarial overtime.

E.  *Travel Time*

In this case, the Court approved the Debtor's retention of out-of-state professionals.  While S.T.N. disallowed travel time for attorneys located outside the District of Vermont, except where the amount of time traveling was consistent with what practitioners located within the District may bill for travel, the Court rejects a bright line rule regarding the employment and compensation of out-of-state professionals.

Rather, the Court will determine on a case-by-case basis whether retention of out-of-state professionals is warranted and their travel time is compensable. Nonetheless, compensation for non-working travel time is limited to one-half the professional's customary billing rate. S.T.N., 70 B.R. at 837.

### F. Research

When billing for legal research, the professional must identify each specific issue researched, and explain why the issue needed to be researched and what use was made of the research in the bankruptcy case. This is especially true in the case of research of topics that may not be obviously relevant to the case. Time spent researching or analyzing abstract legal issues is inherently non-compensable. S.T.N., 70 B.R.at 838. Research on basic principles of bankruptcy law is likewise non-compensable. A determination of what constitutes a "basic principle" will focus largely upon the role of the professional and the professional's representations during the retention process. For example, an accounting firm holding itself out as an expert in the fields of accounting and taxation, with an expertise on SEC reporting standards for publicly traded companies in chapter 11, will not be compensated for time spent researching "bankruptcy issues and reporting," since the Court's approval of that professional's retention and hourly rate was premised upon a reputed high level of expertise.

### G. Preparation of Fee Application

Reasonable time spent preparing a fee application is compensable. S.T.N., 70 B.R. at 835. Section 330 mandates, "[a]ny compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." §330(a)(6). Accordingly, more junior level associates, where available, or administrative staff should be utilized to assist in the preparation of fee applications where appropriate. In addition to an analysis of the time spent by each professional who assisted in preparing a fee application, the total time spent on a fee application must be reasonable. Although time spent preparing a fee application is generally compensable, time spent "fixing" or supplementing a defective fee application is not. The professional seeking compensation has the burden of proving the reasonableness of the fees requested and any cost to provide the Court with additional information that was previously available but not included in the initial fee application should be borne by the professional and not the bankruptcy estate. Likewise, time spent defending a fee application that does not conform to the guidelines set forth in §330, FED. R. BANKR. P. 1016, the U.S. Trustee's Guidelines, or pertinent case law, is not compensable.

At the most basic level, a fee application's arithmetic should be correct. S.T.N., 70 B.R. at 835. "The distance from toe to top should be the same as from top to toe." Id. The application should "foot and tie." For example, when a document consists of a lead schedule and detailed schedules, the total shown on each detailed schedule should be conspicuously evident on the lead schedule, i.e., the detail schedule should "tie" to the lead schedule. While the Court has an independent obligation to review and

rule on each fee application filed, it should not have to spend time figuring out how much the application is seeking or re-computing the amount due because of a lack of clarity or sound accounting methodology. The professional seeking to be compensated bears the burden of providing the Court with all information necessary to a determination of whether the fees requested are compensable. This means all required information must be set forth clearly.

## II. EXPENSES

### A.  General Guidelines

Under § 330(a)(1)(B), a professional seeking reimbursement from the estate for expenses incurred in the case must furnish enough specificity for the Court to establish whether a given expense was both actual and necessary. S.T.N., 70 B.R. at 834.  Only fully documented, actual, out-of-pocket expenses that the applicant can substantiate as necessary will be reimbursed.

### B.  Per Diem

Per diem expenses by their very nature, fail to support a finding that the expenses are actual, necessary or justified.  Accordingly, a request for reimbursement of per diem expenses will be summarily disallowed (unless conspicuously identified in a retention agreement and approved by the Court).

### C.  Reimbursement for Meals

In S.T.N., this Court held that the cost of meals incurred by out-of-state counsel was not compensable from the estate.  70 B.R. at 844.  Notwithstanding the holding in S.T.N., this Court has allowed reimbursement for the reasonable cost of working meals in this case.  To the extent S.T.N. can be interpreted to establish a bright-line rule prohibiting reimbursement for the costs of out-of-state professionals' meals, the Court overrules that bright-line rule.  Rather, the Court will determine whether meals are reimbursable from the estate depending upon the facts and circumstances of the case as well as the specific reason for the retention of the out-of-state professional applying for reimbursement and the specific circumstances underlying the request for reimbursement of the meals in question.  Generally, if the Court deems that it is appropriate for out-of-state professionals to be retained and the meal expenses in question are reasonable and otherwise meet the criteria for allowance, reimbursement for working meals will be permitted.  However, in accordance with this Court's independent duty to protect the estate and the creditors from overreaching professionals and established precedent, and in adherence to the general principles of S.T.N. and §330(a)(1)(B), the applicant must demonstrate that the meal  expenses are actual and justify their necessity. 70 B.R. at 844.  The applicant has the burden to demonstrate that (1) there were no other reasonable alternatives available that would have been less expensive; and (2) there is good reason for the estate to pay the expense (looking to ensure that the applicant is using good judgment and not expending estate resources on extravagances).  The Court finds that under the facts and circumstances of this case, reasonable meal expenses are reimbursable from the estate.

The Court also declines to adopt a bright line rule concerning an amount that may be considered reasonable for any given meal, especially since the cost of a meal depends upon location. Where a request for meal reimbursement includes meals for multiple professionals, the applicant must submit information (preferably with supporting documentation) sufficient for the Court to determine whether the amount requested is reasonable and can be justified as necessary, on a per person basis.

D. *Computer Assisted Legal Research*

During the course of this case, the Court has had occasion to consider whether to reimburse various applicants for computer-accessed legal research (CALR). CALR, such as Westlaw or Lexis, has two distinct expense components. First, there is a fixed cost subscriber fee. The Court finds this fee to be analogous to the cost of subscribing to legal digests and reporters and determines it to be an overhead expense. This cost will not be reimbursed. Second, CALR also has a time or transaction charge for accessing its databases to perform legal research, analogous to the time charges of an attorney doing research in texts. Courts are divided as to whether CALR time charges should be eligible for reimbursement from bankruptcy estates. Many courts have declined to allow any CALR charges as reimbursable expenses. See, e.g., In re Belknap, Inc., 103 B.R. 842, 844 (Bankr. W.D. Ky.1989) (computer research charges disallowed as overhead); In re Command Services Corp., 85 B.R. 230, 234-235 (Bankr. N.D.N.Y. 1988) ("[t]his Court has consistently held that [CALR] expenses are not reimbursable from the Debtor's estate"); In re First Software Corp., 79 B.R. 108, 120 (Bankr. D. Mass.1987); In re Cuisine Magazine, Inc., 61 B.R. 210, 218 (Bankr. S.D. N.Y. 1986); and In re Sapolin Paints, Inc., 38 B.R. 807,816 (Bankr. E.D. N.Y. 1984) ("Lexis research is simply another method for performing research which also constitutes part of the services which are included in the hourly rate"). Other courts have taken the opposing view and have allowed CALR use charges to be reimbursed. See, e.g., In re Wizard Enterprises, Inc., 109 B.R. 708, 710 (Bankr. W.D. La. 1990) (CALR reimbursable); In re Leonard Jed Co., 103 B.R. 706, 712 (Bankr. D. Md. 1989), amended by, 118 B.R. 338, aff'd on reh'g, 118 B.R. 339 ((Bankr. D. Md. 1990) (reimbursement for "computer research attributable to work done for this particular client" allowed.); In re UNR Industries, Inc., 72 B.R. 796, 802 (Bankr. N.D. Ill. 1987) (Lexis research reimbursed); In re Paolino, 71 B.R. 576 (Bankr. E.D. Pa. 1987) (cost incurred for Lexis research, if properly documented, will be allowed as reimbursable expense); In re Seneca Oil Co., 65 B.R. 902, 913 (Bankr. W.D. Okla. 1986)(disallowance of charges for computerized legal research and other non-overhead expenses "could result in an increase in hourly rates, discourage the use of helpful research tools, or reduce incentives for professionals to practice before bankruptcy courts."); In re Tom Carter Enterprises, Inc., 55 B.R. 548, 552 (Bankr. C.D. Cal. 1985) (computer research expense approved); and In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 585 (Bankr. D. Utah 1985) (allowed reimbursement of these costs due to "the practice within the profession of billing them to regular clients"). It is important to note

that all courts which have allowed CALR use charges as a reimbursable expense have allowed reimbursement only of reasonable and necessary CALR costs, pursuant to the standards set forth in § 330. S.T.N. did not address this issue and the time has come for this Court to supplement that case with a determination on the allowability of CALR.

This Court finds the case of In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13 (Bankr. S.D. N.Y. 1991), to be persuasive.   There, the Southern District of New York allowed reimbursement for computerized legal research services expenses, such as Lexis and Westlaw, to the extent of the invoiced cost from the vendor.  Id at 32.   After considering the controlling statute, relevant case law and the guiding principles for allowance of fees and expenses in this District, this Court has determined that it will allow reimbursement for CALR use costs, provided the applicant: (1) demonstrates that the use charges incurred were reasonable and necessary (which necessarily includes a description of the research topic and the length of time spent on each topic); (2) affirms that the applicant bills its non-bankruptcy clients for CALR use charges, including the rate at which it bills its non-bankruptcy clients; and (3) certifies the invoiced cost from the vendor.[4]   With this information, the Court can make the findings required by § 330 and ensure that only actual and necessary expenses are being paid by the bankruptcy estate.  This standard will also apply to other forms of computerized research.

### E. Overhead Expenses

A professional's overhead will be denied reimbursement categorically.   Overhead expenses are those incurred day to day by a professional's office regardless of whom it represents or what services it renders.  Overhead expenses typically include rent, insurance, taxes, utilities, secretarial and clerical pay, library, computer costs (other than CALR or other computerized research as described above), office supplies, local postage and telephone charges, and local travel.   Long distance telephone charges and extraordinary postal expenses may be reimbursed if the expenses are supported as actual and necessary for the particular case.  Expenses described as "July telephone bill" lack enough information for the Court to determine whether the expense was actual or related to the particular case at hand.  Likewise, the Court will declare expenses delineated as "Client related cell phone usage" without any further detail provided, to be an overhead expense.   The Court, as described in greater detail below, will also disallow reimbursement of any expenses which should be considered a cost of doing business or an associated cost of a particular assignment.

### F. PACER/ Copying Charges

Charges incurred through use of the Public Access to Court Electronic Records ("PACER") were

---

[4]  The best evidence of the actual expense incurred for CALR or other computerized research is the invoice from the data provider.  While it may not be feasible for some firms to provide this, based upon the size of the firm and how the firm is billed by the provider, the Court notes that where feasible, the bill from the provider is the preferred supporting documentation for allowance of CALR or computerized research expenses.

not addressed by S.T.N.  The Court finds PACER expenses are akin to copying charges as the party who downloads or prints a document or docket from the electronic records of the Court does this in lieu of having the Clerk's Office copy the [paper] document for him or her.  Clearly it is more efficient for both the consumer and the court system that court users obtain copies of court documents through PACER. Moreover, if the applicant sought reimbursement of a conventional copying expense in such a situation, it would typically be allowed.  For these reasons, PACER charges will be deemed a reimbursable expense provided the applicant provides the required justification of the expense, describing the documents obtained and explaining why they were necessary to the case.

Since S.T.N., the Court has moved to a Case Management/ Electronic Case Management system ("CM/ECF").  Professionals serve documents on those who are registered with the Court electronically through CM/ECF, thereby eliminating the need for paper service of many of the documents filed with the Court.  Accordingly, any request for reimbursement of copy charges associated with service of documents will only be reimbursable to the extent the copies made were necessary for service upon parties who require service via paper.  While attention to thorough service is to be commended, the Court will not reimburse copy charges to enable a professional to serve parties multiple times, using both electronic and paper modes of service.

G. *Travel Expenses*

Reasonable expenses incurred for necessary travel may be reimbursed.  However, the applicant must demonstrate that the travel was actual and justified.  Travel expenses may only be justified if there is a demonstrated nexus between the travel and the bankruptcy case and the applicant demonstrates that a comparably effective, less expensive alternative did not exist.  For example, travel between Los Angeles and Montreal in this particular case, where the Debtors are located in Vermont, the Debtors do not have a business location in Montreal and the professional's primary office is located in New York, will not be compensated.  Likewise, car service expenses for a particular day where there are multiple separate taxi expenses for the same individual appears excessive and absent a sufficient explanation, reimbursement for those expenses will be disallowed. Rental car charges that are incurred for the professional to commute from home or the primary office location to a job location, such as the Debtors' main office, are not compensable from the estate.  Although the gas, which the Court analogizes to be reimbursement for mileage, parking and toll expenses may be reimbursable, the additional request for the reimbursement of the cost of the rental car itself, for nearly every day of the professional's engagement, is tantamount to a request for reimbursement of a car payment which is overreaching and de facto ineligible for compensation from the estate.

### III. THE FINAL APPLICATIONS

#### A. *Fifth and Final Application of Skadden, Arps, Slate, Meagher & Flom, LLP*

On March 3, 2006, Skadden, Arps, Slate, Meagher & Flom, L.L.P. ("Skadden"), as lead bankruptcy counsel for the Debtors, filed its Fifth Application for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred (July 1, 2005 through January 3, 2006) and Final Application for Allowance and Payment of Compensation for Services Rendered and Reimbursement of Expenses Incurred (March 30, 2004 through January 3, 2006) (doc. # 2166).[5] The United States Trustee (the "U.S. Trustee") consented to Skadden's Fifth and Final Applications on April 6, 2006, and the Reorganized Debtors filed a statement of support and no objection to Skadden's Fifth and Final Applications. (<u>See</u> Debtor's Certificate completed by John Hanley, attached to doc. # 2166).

#### 1. *Skadden's Fifth Application*

Skadden's Fifth Application seeks approval of compensation in the amount of $2,026,492.50 and reimbursement of $64,309.84 in expenses incurred during Skadden's Fifth Application Period.  In this application, Skadden requests approval for time spent in maintaining and updating an internal calendar and has submitted a detailed explanation of how the internal calendar has proven integral their administration of this case and their representation of the Debtors in this case.[6]  This is a fee issue the Court has not previously addressed.  Skadden's justification for these fees is that the internal calendar in question tracks all hearing dates, all objection deadlines related to motions filed by or against the Debtors, all dates and deadlines derived from the Court docket, all deadlines resulting from the Bankruptcy Code and Rules, all deposition dates, and all meetings.   The Court finds that Skadden's explanation is sufficient to justify the time Skadden spent maintaining this internal calendar during Skadden's Fifth Application Period and that the fees so earned are reasonable and compensable.

Certain professional fees earned during Skadden's Fifth Application Period are not compensable and therefore, the application for professional fees is approved only in part.  The Court finds that time spent on tasks described as "reviewing e-mails" and "exchanging e-mails" or "review e-mail traffic"

---

[5] For ease of reference, the Court will refer to the application for the time period from July 1, 2005 through January 3, 2006 ("Skadden's Fifth Application Period") as "Skadden's Fifth Application" and the application for the time period from March 30, 2004 though January 3, 2006 ("Skadden's Final Application Period") as "Skadden's Final Application."

[6] Skadden's internal calendar is maintained by paraprofessionals and the Court has previously disallowed compensation for maintaining the calendar as administrative in nature (<u>see</u> doc. # 583) and has disallowed attorney time for maintaining the calendar as lacking sufficient information (doc. # 2085).  However, the Court stated in its Order Granting, in Part, the Fourth Interim Application of Skadden Arps Slate Meagher & Flom LLP for Compensation and Expenses for Period of March 1, 2005- June 30, 2005 (doc. # 2085) that the Court would reconsider the matter if Skadden provided additional information about its review and revision of the case calendar in Skadden's final application for fees in this case.

without any reference to the subject, the recipient or the sender of those emails is not compensable. Accordingly, $745.00 in professional fees that is allocable to these entries is disallowed.

The Court finds the remaining $2,025,747.50 for professional services rendered during Skadden's Fifth Application Period to be compensable. Specifically, the Court finds all other services rendered by Skadden during Skadden's Fifth Application Period were reasonable, necessary and of benefit to the estate. §330(a)(1)(A); In re JLM Inc., 210 B.R. 19, 24 (B.A.P. 2d Cir. 1997).

Although Skadden has generally well itemized and fully articulated the expenses for which it seeks reimbursement, it has failed to provide sufficient information for the Court to determine whether certain expenses are actual, necessary or justified. As a general rule, those expenses which are incurred day-to-day by a professional, regardless of whom the professional represents, are considered "overhead expenses" and are categorically not reimbursable from the estate. S.T.N., 70 B.R. at 844. By contrast, if the applicant provides information for charges that appear to constitute overhead, to demonstrate the expenses are actual and justified, specifically related to and benefited the case at hand, the expenses may be reimbursed. Id. Based upon the information provided, the following entries totaling $3,292.34 are disallowed as overhead.

| Date Incurred | Description Provided | Amount Requested |
|---|---|---|
| July 2005 | Telecommunications/ Telephone Expense | $ 47.10 |
| July 2005 | Teleconferencing | $833.08 |
| August 2005 | Telecommunications/ Telephone Expense | $ 68.58 |
| August 2005 | Teleconferencing | $ 8.19 |
| August 2005 | Out of Town Travel [associate's return to Houston] | $240.68 |
| August 2005 | Out of Town Meals [average $55.89] | $223.56 |
| August 2005 | Out of Town Meal [one meal, one professional] | $ 55.62 |
| September 2005 | Telecommunications/ Telephone Expense | $ 57.02 |
| September 2005 | Teleconferencing | $576.62 |
| October 2005 | Telecommunications/ Telephone Expense | $ 32.79 |
| October 2005 | Teleconferencing | $ 39.40 |
| November 2005 | Telecommunications/ Telephone Expense | $37.61 |
| November 2005 | Teleconferencing | $188.18 |
| December 2005 | Telecommunications/ Telephone Expense | $135.40 |
| December 2005 | Teleconferencing | $748.51 |

However, the Court finds that the remaining $ 61,017.50 sought for reimbursement of expenses incurred during Skadden's Fifth Application Period to be reasonable, necessary and justified. Accordingly, the request for reimbursement of these expenses is allowed.

*2. Skadden's Final Application*

Skadden's Final Application seeks final allowance and payment of compensation in the amount of $7,573,974.50 for professional services rendered and reimbursement of expenses incurred in the amount of $281,432.36 during Skadden's Final Application Period.

The Court allows all interim fees approved during Skadden's Final Application Period. Specifically, the Court finds that the services rendered by Skadden were reasonable, necessary and of great benefit to the estate, pursuant to §330(a)(1)(A). See also, In re JLM, Inc., 210 B.R. at 24. In ruling on Skadden's Final Application, the Court observes that Skadden has provided exceptionally competent services in this difficult case and demonstrated excellent business, legal and billing judgment throughout the case. Accordingly, the Court allows in full the allowed professional fees sought in connection with services rendered during Skadden's Final Application period.

Further, although Skadden states that it is not seeking allowance of compensation previously denied for maintaining the internal case calendar, upon review of the explanation provided by Skadden in Skadden's Fifth Application, the Court deems it is appropriate to reconsider the denial of those fees and permit compensation of these fees. Accordingly, as noted above, the Court allows the $4,428.50 previously disallowed for maintenance of Skadden's internal calendar (see docs. ## 583 at p. 2; and 2085 at p. 1).

The Court hereby also allows all expenses approved during Skadden's Final Application Period. Specifically, the Court finds the expenses for which Skadden seeks reimbursement are reasonable and appropriate pursuant to §330(a)(1)(B) and thus, are approved and allowed in full.

### B. Fourth and Final Application of Obuchowski & Emens-Butler

On March 3, 2006, Obuchowski & Emens-Butler ("Obuchowski"), as local counsel to the Debtors, filed its Application for Fourth and Final Allowance for Compensation and Reimbursement of Expenses (March 30, 2004 through January 3, 2006) (doc. # 2168).[7] The U.S. Trustee consented to Obuchowski's Fourth and Final Applications on April 6, 2006, and the Reorganized Debtors have stated that they have no objection to Obuchowski's Fourth and Final Applications. (See doc. # 2214).

---

[7] For ease of reference, the Court will refer to the application for the time period from August 1, 2005 through January 3, 2006 ("Obuchowski's Fourth Application Period") as "Obuchowski's Fourth Application" and the application for the time period from March 30, 2004 though January 3, 2006 ("Obuchowski's Final Application Period") as "Obuchowski's Final Application."

*1. Obuchowski's Fourth Application*

Obuchowski's Fourth Application seeks compensation in the amount of $23,496.63 for professional services rendered and reimbursement in the amount of $1,049.66 for expenses incurred during Obuchowski's Fourth Application Period.

After considering Obuchowski's Fourth Application in light of the standards set forth in §330 and the principles set forth above, the Court grants the application for payment of attorney's fees, in full.  The Court finds all attorneys' fees earned during Obuchowski's Fourth Application Period to be compensable. Specifically, the Court finds that the services rendered by Obuchowski were reasonable, necessary and of benefit to the estate, pursuant to §330(a)(1)(A).  See also, In re JLM, Inc., 210 B.R. at 24.

The Court further finds that the $1,049.66 in expenses for which Obuchowski seeks reimbursement during Obuchowski's Fourth Application Period is reasonable and appropriate, and accordingly, they are approved and allowed in full.

*2. Obuchowski's Final Application*

Obuchowski's Final Application seeks final approval of all interim fees awarded to date. Obuchowski seeks approval for $138,604.64 for services rendered and $7,210.82 in expenses incurred during Obuchowski's Final Application Period.  However, based upon the record before the Court, the Court finds that only $138,492.14 in fees and $7,204.66 for reimbursement of expenses has been approved during Obuchowski's Final Application Period.[8]  To the extent Obuchowski seeks approval of the $112.50 disallowed in connection with Obuchowski's Second Application, based upon the information provided to the Court, the Court denies that request.

The Court observes that Obuchowski's service as local counsel required complex and immediate assistance to many out-of-state attorneys and that it delivered high quality services under very tight time constraints.  The Court finds that the services rendered during Obuchowski's Final Application Period were reasonable, necessary and of benefit to the estate, pursuant to §330(a)(1)(A).  See also, In re JLM, Inc., 210 B.R. at  24.

The Court finds the approved expenses for which Obuchowski seeks reimbursement during Obuchowski's Final Application Period are reasonable and appropriate pursuant to §330(a)(1)(B)  and thus, they are approved and allowed, in full.

---

[8] In Obuchowski's Final Application, Obuchowski asserts that the fees requested in its Second Application were approved in full (doc. # 2168, p. 4, ¶ 2).  However, upon review of the record, $112.50 of those requested fees were disallowed (doc. # 1340). The Court has been unable to discern where the difference of $6.16 requested for the reimbursement of expenses originated.  Accordingly, as the Court refers to all interim fees awarded to date, the Court refers to $138,492.14 and for all interim expenses, $7,204.66.

*C. Pending Fee Applications of Wilmer Cutler Pickering Hale & Dorr, LLP*

On March 3, 2006, Wilmer Cutler Pickering Hale and Dorr, LLP ("WCPHD") in its capacity as special counsel to the Debtors, filed a Fifth (July 1, 2005 – January 3, 2006) and Final (March 30, 2004 – January 3, 2006) Fee Application for Final Allowance of Compensation for Services Rendered and Reimbursement of Expenses (doc. # 2169).[9]  In WCPHD's Final Application, WCPHD also requests compensation and reimbursement of expenses for the time period of March 1, 2005 through June 30, 2005 ("WCPHD's Fourth Application Period"), as set forth in WCPHD's Fourth Interim Fee Application for Interim Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel to the Debtors (doc. #2037) ("WCPHD's Fourth Application").  The U.S. Trustee objected to WCPHD's Fourth Application (doc. # 2071 and WCPHD's Fifth and Final Applications (doc. # 2219). The Debtors filed a statement of support and identified no objection to the Fifth and Final Applications (doc. # 2225).[10]  The Court will consider each application and the objections thereto, in turn.

*1. WCPHD's Fourth Application*

On November 22, 2005, WCPHD filed WCPHD's Fourth Application.  The U.S. Trustee objected to WCPHD's Fourth Application on the basis of inadequate disclosures (doc. # 2071).  The question the U.S. Trustee raised was one of apparent first impression and turned on a professional's conflict checking obligation after the merger of a law firm.  The issue arose as follows: On May 19, 2004, the Court approved the Debtors' retention of Hale & Dorr, LLP as special counsel to the Debtors *nunc pro tunc* to March 30, 2004, the date the Debtors filed their chapter 11 petitions (doc. # 240); Hale & Dorr, LLP, merged with Wilmer, Cutler, Pickering, LLP on May 31, 2004 to form WCPHD (see doc. # 517, n.1).  As of the filing of WCPHD's Fourth Application on November 22, 2005, WCPHD had not supplemented its disclosure statement under FED. R. BANKR. P. 2014(a).  The only disclosures provided addressed Hale & Dorr, LLP's connections to the parties-in-interest and not those of Wilmer, Cutler, & Pickering, LLP.  In addition, the supplemental disclosure of Skip Victor, the Senior Managing Director of Chanin Capital Partners ("Chanin"), which served as financial advisor and investment banker to the Official Committee of Unsecured Creditors in this case, identified that Chanin had briefly retained WCPHD as its counsel in this case, notwithstanding WCPHD's retention as special counsel to the Debtors (doc. # 1535).  The U.S. Trustee objected to the allowance of any compensation or any reimbursement of expenses to WCPHD until WCPHD fully complied with Fed. R. Bankr. P. 2014(a) and the U.S. Trustee was provided with adequate time to review any supplemental disclosures or, alternatively, the U.S. Trustee urged WCPHD to

---

[9] The request for compensation and reimbursement of expenses for the period July 1, 2005 through January 3, 2006 ("WCPHD's Fifth Application Period") will be referred to as "WCPHD's Fifth Application" and for the period of March 30, 2004 through January 3, 2006 ("WCPHD's Final Application Period") will be referred to as "WCPHD's Final Application."

[10] Although the Debtors do not specifically reference WCPHD's Fourth Application and the Court record does not specifically reflect the Debtor's agreement thereto, because WCPHD's Final Application specifically incorporates WCPHD's Fourth Application, the Court deems this statement sufficient as to all currently pending WCPHD fee applications.

withdraw its application and see theses fees in a final application for compensation, presumably after resolving the disclosure deficiency (doc. # 2071, p. 3). On January 12, 2006, WCPHD withdrew WCPHD's Fourth Application without prejudice to seek payment of the fees and expenses in its final fee application (doc. # 2094) and subsequently filed WCPHD's Final Application. The U.S. Trustee has filed a similar disclosure based objection to WCPHD's Final Application that will be addressed below.

WCPHD's Fourth Application seeks allowance of $918,526.25 for compensation for professional services rendered and $41,849.14 for the reimbursement of expenses incurred during WCPHD's Fourth Application Period.

*a.      Compensation for Services Rendered*

Certain of the professionals' fees earned during WCPHD's Fourth Application Period are not compensable and therefore, the Court approves the professionals' fees only to the extent of $909,275.25. Specifically, time devoted to administrative activities such as preparing binders, reviewing, indexing, organizing and printing documents is not compensable from the Debtors' estate. The Court finds the following tasks to be administrative in nature, and accordingly denies allowance of compensation for the sums requested: preparation of binder for summary judgment hearing ($1,488.00); "Print Disclosure Statement for Review" ($34.00); reviewing, indexing, and organizing documents ($2,068.50). Additionally, in connection with the organization of documents, WCPHD failed to demonstrate that "supervising document review" provided any benefit to the estate; accordingly, the $2,398.00 requested for such entries is disallowed.

When different services are lumped together, the Court cannot determine whether the time allotted for each service is reasonable and the Court will summarily disallow such time. S.T.N., 70 B.R. at 832. WCPHD's Fourth Application lumps travel time to and from a Quakertown facility, which should be billed at one-half the professional's customary rate, with other services, namely, attendance at an equipment inspection.[11]   The professional billed 7.50 hours, with no delineation of how much time was spent en route or at the inspection, and no specification that the time spent traveling has been reduced by one-half the professional's customary rate. Based on the record before the Court, it denies the $3,262.50 sought in connection with this time entry dated June 15, 2005.

The Court finds that the remaining professionals' fees earned during WCPHD's Fourth Application Period are compensable pursuant to § 330(a)(1)(A). Specifically, the Court finds all other services rendered by WCPHD during WCPHD's Fourth Application Period to be reasonable, necessary and of benefit to the estate. §330(a)(1)(A); In re JLM, Inc., 210 B.R. at 24. Accordingly, the

---

[11] While WCPHD's Fourth Application contains a separate category for travel time in which all the time billed has been reduced by 50%, this travel time does not appear in the travel category but rather, in the "Riegel Paper Litigation" category.

professionals' fees sought in connection with services rendered during WCPHD's Fourth Application Period are approved and allowed to the extent of $ 909,275.25.

      b.    *Reimbursement for Expenses Incurred*

WCPHD has failed to provide sufficient information for the Court to determine whether certain apparently overhead expenses are actual, necessary or justified. See <u>S.T.N.</u>, 70 B.R. at 844. WCPHD seeks $922.35 for "scanning services." According to WCPHD's Fourth Application, WCPHD scanned documents into a format compatible with special software used for preparing and presenting exhibits. However, WCPHD fails to distinguish these services from copying or typing – the cost of which is overhead. Accordingly, WCPHD's request for reimbursement for scanning services is denied. WCPHD requests reimbursement for office supplies in the amount of $281.75 and $120.24 for reimbursement of phone expenses. WCPHD provides no basis for the Court to consider these expenses as anything but overhead. Consequently, the $401.99 is disallowed. WCPHD also seeks reimbursement for various copying services performed by outside vendors, asserting that the expenses requested represent the actual costs incurred by WCPHD at the rates charged by such vendors. However, the application lacks sufficient information for the Court to determine whether the rates charged and thus, WCPHD's expenses, were reasonable or necessary. For example, WCPHD's Fourth Application seeks reimbursement for "Color Copies" in the amount of $971.90, "Oversized Copies' in the amount of $48.00, "Litigation Copies" in the amount of $6,047.61, "Exhibit Boards" in the amount of $56.70 without any reference to the number of copies made or the cost per copy. Based upon the descriptions provided, the Court disallows $7,124.21 for these copying charges.

While reasonable, necessary and justified travel expenses may be reimbursable from the estate, when travel expenses are lumped together, the applicant has failed to provide the Court with sufficient information to determine whether the expenses are reimbursable. WCPHD's Fourth Application seeks $1,988.73 in travel expenses are that are lumped together – the entries include hotel, taxi, "expenses during trip to New Jersey for file review," and "gas, tolls and laundry service on 6/30/05."[12] Based upon the information provided, WCHPD has failed to demonstrate that these expenses are actual, necessary and justified. Hence, the $1,988.73 requested in lumped travel expenses is disallowed.

WCPHD's Fourth Application also seeks reimbursement of $711.08 paid to Hancock and Estabrook LLP ("H&E"), which served as local counsel to WCPHD in pending litigation against the Debtors. WCPHD's Fourth Application recognizes that H&E was not retained as either special counsel or as an ordinary course professional during the Fourth Application Period. Pursuant to Vt. L.B.R. 2014-1(a), by failing to ensure that Court approval was properly sought, WCPHD assumed the risk that the

---

[12] The Court cannot imagine any scenario where a cost of daily living, such as laundry service, could be compensable from the Debtors' estate, and hence, that component of these lumped expenses would be disallowed in any event.

Debtors' estate may not reimburse this expense.  WCPHD has failed to justify this expense and has failed

to provide the Court with sufficient records to find that the amount requested is actual and necessary.

Based upon therecord, the Court denies WCPHD's request for reimbursement of this expense.

The Court further finds that the remaining $30,700.78 of the expenses for which WCPHD seeks

reimbursement during WCPHD's Fourth Application Period are reasonable and appropriate and,

accordingly, they are approved and allowed.

*2. WCPHD's  Fifth Application*

WCPHD's Fifth Application seeks allowance of $405,731.50 for compensation for professional

services rendered during WCPHD's Fifth Application Period and $35,693.89 for the reimbursement of

expenses incurred.

The Court finds the professionals' fees earned during WCPHD's Fifth Application Period to be

fully compensable.  Specifically, the Court finds the services rendered by WCPHD were reasonable,

necessary and of benefit to the estate pursuant to § 330(a)(1)(A).  See also, In re JLM, Inc., 210 B.R. at

24.  Accordingly, the professionals' fees sought in connection with services rendered during WCPHD's

Fifth Application Period are approved and allowed, in full.

The Court further finds that WCPHD has provided insufficient information with respect to certain

expenses for telephone charges totaling $90.07, copy charges totaling $627.16 and for office supplies

totaling $1,579.39 for the Court to assess whether these expenses can be distinguished from general

overhead expenses and properly classified as eligible for reimbursement.  Due to the lack of information

provided, the Court denies WCPHD's request for reimbursement of these telephone charges, copy charges

and office supplies.

The Court further finds that by failing to distinguish various travel charges and lumping travel

expenses together, WCPHD has failed to demonstrate that certain travel related expenses are justified and

reasonable.  Accordingly, the Court disallows $10,576.03 for the following entries:

| Date Incurred | Description Provided | Amount Requested |
|---|---|---|
| 7/15/05 | Travel for Trial in Watertown NY 6/18-6/30/05- C. Bleu (Lodging & Rental Car) | $3,071.03 |
| 7/20/05 | Travel Mark G. Matuschak – Travel expenses re: Trip to Syracuse NY for Trial 6/19/05 thru 6/30/05 | $1,344.40 |
| 7/29/05 | Travel Vinita Ferrera – Trial Expenses 6/19-30,2005 – Hotel, Car Rental | $5,702.08 |
| 8/17/05 | Travel Vinita Ferrera- Room Charges paid by Ferrera for Client: Alex Kwader 6/19-28,2005 | $ 458.52 |

While reasonable meal expenses may be reimbursed from the estate in this case, the Court finds

that WCPHD has failed to submit adequate information for the Court to determine whether the amount

requested is reasonable and can be justified as necessary. The Court disallows the following $1,754.80

requested for meal expenses:

| Date Incurred | Description Provided | Amount Requested |
|---|---|---|
| 7/15/05 | Out of Town Meals for trial is Watertown NY 6/18-6/30/05 | $1,130.23 |
| 7/20/05 | Dinner on 6/29/05 | $ 183.54 |
| 7/29/05 | Food/drink expenses due to travel for trial | $ 178.18 |
| 8/11/05 | Dinner on 6/26/05 | $ 89.31 |
| 8/11/05 | Dinner on 6/29/05 | $ 173.54 |

The Court further finds that WCPHD has demonstrated that the remaining $21,066.44 for reimbursement for expenses incurred during WCPHD's Fifth Application Period are reasonable and appropriate and, accordingly, they are approved and allowed.

*3. WCPHD's Final Application*

WCPHD's Final Application seeks final approval of all interim fees awarded to date, $2,488,157.98, and $123,256.23 in expenses for the period of March 30, 2004 through January 3, 2006. However, WCPHD does not ask for the Court to reconsider any fees or expenses previously disallowed, and based upon the record before the Court, the Court finds that it has approved only $2,478,906.98 in fees and $97,480.42 for reimbursement of expenses for WCPHD in this case.[13]

After the withdrawal of WCPHD's Fourth Application, WCPHD filed a second supplemental disclosure with the Court (doc. # 2124) ("WCPHD's Second Supplement"), in which WCPHD supplemented its previous disclosure to include an explanation of WCPHD's process for determining conflicts or potential conflicts when Hale & Dorr, LLP merged with Wilmer Cutler & Pickering and disclose the retention of WCPHD by Chanin in this case. WCPHD's Second Supplement discloses that WCPHD received $29,159.54 from Chanin for WCPHD's legal services in this case.[14] Nonetheless, the U.S. Trustee filed a substantially similar objection to WCPHD's Final Application as it did to WCPHD's Fourth Application (doc. # 2219) (the "U.S.T. Objection"). The U.S.T. Objection requests the Court deny a "significant portion of the fee requested" or at least impose a $29,159.54 reduction, due to WCPHD's significant non-disclosure and a lapse of 242 days before WCPHD filed its second supplemental

---

[13] The differential is due in large part to the Court's consideration of WCPHD's Fourth and Fifth Applications herein. The Court acknowledges its mathematical error in connection with WCPHD's Second Supplement to WCPHD's First Application (doc. # 783), and notes that the Court approved $9,932.83 in expenses rather than $10,631.93;consistent with the analysis in WCPHD's Final Application, the Court uses this figure.

[14] In light of Chanin's non-disclosure of its connection with WCPHD in this case, the Court has previously disallowed Chanin's request for the reimbursement of this legal expense (doc. # 2236).

disclosure.[15]   WCPHD responded to the U.S.T. Objection and voluntarily reduced the fee requested in WCPHD's Final Application by $29,159.54 (doc. # 2228). After a hearing on WCPHD's Final Application and the U.S.T. Objection, WCPHD filed a supplement to WCPHD's Final Application in which WCPHD details the events surrounding Chanin's retention of WCPHD in this case, what steps WCPHD took to rectify this particular situation and the process WCPHD has instituted to minimize the likelihood of any comparable conflict occurring in the future (doc. # 2229).

The Court finds that WCPHD was remiss in not supplementing its disclosures in a timely manner and, in this respect, sustains the U.S.T. Objection. However, WCPHD's voluntary reduction of $29,159.54, the amount that Chanin paid to WCPHD, is an appropriate and sufficient remedy under the circumstances and the Court overrules the UST Objection to the extent it seeks a further disallowance of WCPHD's final request for fees.

The Court hereby allows all interim fees approved to date for services rendered during WCPHD's Final Application Period, less the $29,159.54, in the total amount of $2,449,747.44.  The Court finds that the services rendered by WCPHD were reasonable, necessary and of benefit to the estate, pursuant to §330(a)(1)(A).  See also, In re JLM, Inc., 210 B.R. at 24.

Further, the Court hereby allows the reimbursement of all approved expenses incurred during WCPHD's Final Application Period. Specifically, the Court finds the approved expenses for which WCPHD seeks reimbursement are reasonable and appropriate pursuant to §330(a)(1)(B).


### D. Fourth and Final Fee Application of KPMG, LLP

On March 17, 2006, KPMG, LLP ("KPMG") as auditors and providers of certain accounting, tax and employment benefit services to the Debtors, filed its Fourth Interim and Final Fee Application for Compensation and Reimbursement of Expenses (doc. # 2209). KPMG's Fourth Interim Application seeks $431,871.75 for services rendered and $9,379.00 for expenses incurred from May 1, 2005 through January 2, 2006 ("KPMG's Fourth Application Period") ("KPMG's Fourth Application").  KPMG seeks final approval of $1,267,259.84 for services rendered and reimbursement of $34,944.00 for expenses incurred from April 19, 2004 through January 3, 2006 ("KPMG's Final Application Period") ("KPMG's Final Application").  The U.S. Trustee consented to KMPG's Fourth and Final Applications on April 6, 2006, and the Debtors filed a statement of support of KPMG's Furth and Final Applications (doc. # 2215).

---

[15] According to the U.S.T. Objection, this 242 days is calculated from the date WCPHD withdrew its motion to appear pro hac vice on behalf of Chanin and the date WCPHD's Second Supplement was filed.

*1.   KMPG's Fourth Application*

Certain professional fees earned during KPMG's Fourth Application Period are not compensable and therefore, the application for professional fees is approved only in part.  While the Court has long recognized that a professional may be compensated for time spent on the preparation of a fee application, S.T.N., 70 B.R. at 835, the prerequisite for allowance is the professional's demonstration that the fees sought are reasonable and the time spent was reasonable and necessary.  KPMG seeks $11,987.00 for time spent preparing fee statements and reviewing and preparing billing during KPMG's Fourth Application Period.  Senior level professionals, a senior manager and a partner, with billing rates of $525 and $600, respectively,[16] are the only professionals who worked on preparing fee statements.  By way of comparison, the application discloses that senior associates working on the case billed between $175 and $200 per hour.  KPMG is an accounting firm with extensive experience in bankruptcy cases and thus it would seem reasonable to expect that senior associates would have the skills to prepare – or at least assist in the preparation of – a fee application.  The burden is on KPMG to demonstrate why only such expensive professionals were qualified to prepare KPMG's Fourth Application, and it has not met this burden.[17]  Hence, the Court disallows all compensation in the category of fee statement preparation.  See §330(a)(6).

The Court finds the remaining $419,884.75 for professional services rendered during KPMG's Fourth Application Period to be compensable.  Specifically, the Court finds all other services rendered by KPMG during KPMG's Fourth Application Period were reasonable, necessary and of benefit to the estate. §330(a)(1)(A); In re JLM Inc., 210 B.R. at 24.

However, the Court finds that certain of the expenses for which reimbursement is sought lack sufficient information for the Court to determine whether the expenses are actual, necessary or justified. §330(a)(1)(B). In particular, KPMG has provided no information to distinguish the requested cell phone expense ($101.00) from general overhead expenses as defined in S.T.N. See 70 B.R. at 844, and it is therefore disallowed.

The Court further finds that the *per diem* dinner expenses set forth in KPMG's Fourth Application, by their very nature, fail to support a finding that the expenses are actual, necessary or justified. Despite KPMG's previous assertion that it does not customarily prepare fee applications in the ordinary course of its business, KPMG has demonstrated an ability to provide a detailed accounting of its actual expenses incurred in this case.  The Court is not convinced that KPMG is incapable of providing a detailed

---

[16] The Court refers to the senior manager's lower billing rate of $525 an hour although her billing rate increased during the Fourth Application Period to $550 an hour (see doc. # 2209, Ex. B).

[17] Additionally, as discussed in more detail below, the figures set forth in KPMG's Final Application do not accurately reflect what has been previously allowed by the Court.

accounting on its actual meal expenses. Therefore, the request for reimbursement of these meal expenses in the amount of $1,124.00 is denied.

The Court further finds that the remaining $8,154.00 of expenses for which KPMG seeks reimbursement during KPMG's Fourth Application Period is reasonable and appropriate, and accordingly, they are approved and allowed.

### 2. *KPMG's Final Application*

KPMG seeks final approval of compensation in the amount of $1,267,259.84 for services rendered and reimbursement of $34,944.00 for expenses incurred during KPMG's Final Application Period. However, based upon the record before the Court, the Court has only approved fees in the amount of $1,251,675.78 and reimbursement of expenses in the amount of $32,244.96 during KPMG's Final Application Period. To the extent KPMG seeks approval of previously disallowed compensation and fees, the Court denies that request. The Court hereby allows all interim fees approved to date, finding that the services rendered by KPMG in the amount of $1,251,675.78 during KPMG's Final Application Period were reasonable, necessary and of benefit to the estate, pursuant to §330(a)(1)(A). <u>See</u> <u>also</u>, <u>In re JLM, Inc.</u>, 210 B.R at 24.

The Court allows all approved expenses totaling $32,244.96. Specifically, the Court finds the approved expenses for which KPMG seeks reimbursement during KPMG's Final Application Period are reasonable and appropriate pursuant to §330(a)(1)(B) and thus, they are approved and allowed in full.

## E. Final Fee Application of Weiser LLP

On March 3, 2006, Weiser, LLP ("Weiser"), as restructuring accountant for the Debtors, filed its Final Application for Compensation for Professional Services Rendered and Reimbursement of Expenses for the period from March 1, 2004 through December 31, 2005 ("Weiser's Final Application Period") (doc. # 2167) ("Weiser's Final Application"). Weiser's Final Application seeks allowance and payment of compensation in the amount of $1,802,623.25 for professional services rendered and reimbursement of $123,645.15 for expenses incurred during Weiser's Final Application Period. The U.S. Trustee consented to Weiser's Final Application on April 6, 2006, and the Reorganized Debtors stated they have no objection to Weiser's Final Application. (<u>See</u> Exhibit B, Affidavit of John Hanley, ¶ (c)). Currently pending before the Court is Weiser's request that the Court: (1) approve compensation for professional services rendered in the amount of $133,825.00 and approve reimbursement of expenses incurred in the amount of $8,412.78 from November 1, 2005 through December 31, 2005 ("Weiser's Fifth Application Period"); (2) approve all interim fees and expenses approved during Weiser's Final Application Period; and (3) allow expenses previously disallowed,

*1. Requested Fees*

The professional fees sought in Weiser's Final Application are fully compensable.  Specifically, the Court finds that the services rendered by Weiser during Weiser's Fifth Application Period and Weiser's Final Application Period were reasonable, necessary and of benefit to the estate, pursuant to §330(a)(1)(A).  See also, In re JLM, Inc., 210 B.R. at  24.  Accordingly, the Court allows all professional fees sought during Weiser's Final Application Period, in full.

*2.  Requested Expenses*

The Court hereby allows reimbursement for all previously allowed expenses to date.  In Weiser's Final Application, Weiser specifically seeks reimbursement of expenses that have been previously disallowed by the Court, to wit, reimbursement of lodging charges aggregating $8,790.92.  In Weiser's Second Application (doc. # 888), Weiser sought reimbursement for various lodging expenses for which there were no specifics beyond the date the expense was incurred, the fact that it was for lodging, and the amount requested.  Acknowledging that the cost of lodging may vary from location to location, the lack of specificity as to the location and whether the professional stayed one or multiple nights, the expense appeared excessive and the Court was unable to determine whether the expenses were necessary or justified based upon the information provided (doc. # 1093). Therefore, the Court disallowed the reimbursement of those expenses (Id.).  In Weiser's Third Application (doc. # 1551), a portion of the lodging entries again failed to specify the length of stay, once again making it impossible to determine whether the expenses were necessary or justified.   Accordingly, the Court also disallowed the reimbursement of those expenses (doc. # 1810).  In Weiser's Final Application, Weiser has supplemented the lodging descriptions previously provided by clarifying the duration of each stay.   With this supplemental information, the Court finds the previously disallowed lodging expenses totaling $8,790.92 are reasonable, necessary and justified.   Accordingly, the request to allow these previously disallowed expenses is granted and the Court will allow reimbursement of these expenses.

Weiser also seeks reimbursement of expenses for rental cars that were previously disallowed in the amount of $20,334.83.  The Court disallowed $1,417.24 in connection with Weiser's Second Application, $8,004.38 in connection with Weiser's Third Application, and $10,913.21 in connection with Weiser's Fourth Application.  Weiser argues that the expenses were incurred as a result of weekly trips to the Debtors' office in Brattleboro, Vermont from New Jersey and New York City.  Weiser asserts, "Given that our client requested that Weiser staff this engagement on-site at the Company's office, we believe that these expenses were necessary to fulfill the engagement." (Weiser's Final Application at p. 6). Weiser asserts that its need to travel 500 miles per week to the Debtors' office renders the expense necessary.  The Court has consistently allowed Weiser's requests for reimbursement for other traveling expenses including gas for the rental car, parking and tolls.  While parking and tolls are generally

reimbursable, gas expenses generally are not. However, given that Weiser did not request reimbursement for mileage, the Court allowed reimbursement of expenses for auto fuel. The Court views Weiser's request for reimbursement of rental car charges as tantamount to an applicant requesting reimbursement for car payments.[18] The Court cannot imagine a scenario where it would be reasonable to require an estate to reimburse a professional for car payments, particularly in addition to mileage. The requested travel expenses are a cost of doing business and Weiser should have factored these into its decision whether to accept the engagement. Hence, the Court denies Weiser's request that the Court vacate its previous rulings denying the request for reimbursement for these rental car expenses.

Weiser's Final Application includes a request for reimbursement of expenses incurred during Weiser's Fifth Application Period totaling $8,412.78. As noted above, the Court denies the request for reimbursement of $2,852.88 of rental car expenses. The Court also denies the request for reimbursement of certain expenses for cell phone and various other telephone charges totaling $175.03 based on Weiser's failure to submit information sufficient for the Court to determine whether the expenses are actual, necessary and justified. See § 330(a); S.T.N., 70 B.R. at 836, 844.

Weiser has also failed to justify as actual and necessary certain meal expenses. Weiser's Final Application requests reimbursement for numerous dinner expenses incurred during Weiser's Fifth Application Period that range from $25.00 to $59.00. It is unclear whether these meal expenses are for one person or multiple professionals and hence, many of them appear extravagant. Therefore, the request for reimbursement of meal expenses is denied to the extent to $925.04.

The Court finds the remaining $4,459.83 Weiser seeks for reimbursement of expenses incurred during Weiser's Fifth Application Period to be reasonable, necessary and justified. Accordingly, these expenses are allowed pursuant to § 330(a)(1)(B).

### CONCLUSION

The principles for determining the allowance of professional fees and expenses announced in this decision shall govern all fee applications filed in this District and supersede S.T.N. for that purpose.

The Court recognizes that the Debtors have paid in excess of $26 million for professional services and expenses throughout the course of this case, which by far exceeds the typical amount for a chapter 11 case filed in this District.[19] However, what appeared at the outset to be an extraordinarily collaborative chapter 11 reorganization process, became extremely complicated when the collaboration disintegrated, the Court appointed an examiner, and sensitive issues involving ethics and professionalism arose in an

---

[18] It is not lost on the Court that the total requested fees for reimbursement of rental car related expenses is enough to purchase a small car.

[19] The $26 million represents additional fees and expenses awarded to various other professionals that are not included in the Court's instant decision.

extremely hostile posture.   Nonetheless, through the efforts of the competent and conscientious professionals who represented all parties, the creditors ended up receiving a substantial double digit dividend equivalent to what was envisioned prior to the collapse of the case, and this Vermont-based company continues to operate.   Despite the at times hostile upheaval and intense turmoil, the results achieved in this case were superlative, by any standard.   The Court's findings with respect to the awarding of fees and granting of reimbursement requests represent what it deems the proper application of §330 and applicable case law.   Where the Court has disallowed fees or expenses, the disallowance is generally the result of the applicant's failure to provide sufficient information to justify the request, rather than a reaction to the quality of  the services rendered by that professional.

    This memorandum of law constitutes the Court's findings of fact and conclusions of law. The Court will issue separate orders setting forth the specific fee and expense allowances for each of the Final Applications.


September 6, 2006                                    Colleen A. Brown
Rutland, Vermont                                    United States Bankruptcy Judge