UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:

**FIBERMARK, INC.,**                                   Chapter 11 Case
**FIBERMARK NORTH AMERICA, INC. and**                  # 04-10463
**FIBERMARK INTERNATIONAL HOLDINGS, LLC,**             Jointly Administered
                                   Debtors.

_____

Filed & Entered
On Docket
06/14/07

| Appearances: | Gwendolyn W. Harris | Jennifer Emens-Butler |
|---|---|---|
| | McCarty, Buehler & Bixby, P.C. | Obuchowski & Emens-Butler |
| | Brattleboro, Vt. | Bethel, Vt. |
| | *For the Key Employee* | *For the Reorganized Debtors* |

**MEMORANDUM OF DECISION**
**GRANTING KEY EMPLOYEE'S MOTION TO REOPEN CHAPTER 11 CASE**

In this matter, the Court is presented with an issue of first impression in this District: Does this Court have jurisdiction to adjudicate a dispute that arose after a chapter 11 case was closed, where the dispute relates to an agreement approved by the Court, and that agreement, the plan, and the confirmation order all contained specific jurisdiction-retention language? And, if so, should the Court, in the exercise of its discretion, reopen the case to adjudicate the dispute? Having analyzed relevant case law, the Court concludes that it has ancillary subject matter jurisdiction to adjudicate the post-closing dispute and there is cause to grant the motion to reopen the case.

**Procedural History**

On September 27, 2006, the Court issued a Final Decree (doc. # 2253) and shortly thereafter the Clerk's Office closed this chapter 11 case. Approximately six months after entry of the Final Decree, A. Michael Wilson ("Wilson" or "Employee") moved to reopen the case (doc. # 2256). Wilson is a "key employee" of the Debtors, as that term is defined in the Key Employee Severance Plan ("KESP"), and as set forth in the "Order Under 11 U.S.C. §§ 105(a) and 363(b)(1) Authorizing Implementation of Key Employee Retention and Severance Plans," entered on August 6, 2004 (doc. # 486). Wilson seeks to reopen the case in order to have this Court resolve a dispute regarding whether he was terminated from his employment for "Good Reason" as that phrase is defined in the KESP. He asserts that the retention of jurisdiction language in the Chapter 11 Plan (doc. # 1996), incorporated into the Confirmation Order (doc. # 2057), serves as the subject matter jurisdictional basis for this Court to resolve the employment dispute even though the case is now closed, and was closed at the time the dispute arose. The Reorganized Debtors object to the reopening of the case (doc. # 2258), arguing that: (1) this Court's retention of

jurisdiction does not extend beyond the entry of the Final Decree; (2) Wilson's situation presents a "two-party dispute" which can be resolved in any court of law and does not require the reopening of a chapter 11 case which has no assets left; (3) the motion to reopen is premature, because the KESP requires a 30-day negotiation process between the parties; and (4) on the merits, Wilson was terminated "For Cause" and has no right to relief.

On May 8, 2007, the Court heard oral argument on the motion to reopen. It took a recess to review the KESP, a confidential document, to determine whether the parties were prohibited from seeking judicial resolution prior to the expiration of a mandatory 30-day negotiation period. The Court concluded that, although the document is ambiguous, the equities favored requiring the parties to negotiate for 30 days before allowing them to proceed in court. The Court continued the hearing until June 6, 2007, and granted the Reorganized Debtors and Employee an opportunity to supplement their briefs to address the jurisdictional question. The Court stated that it would rule on the motion to reopen on June 6th if the parties had not settled the issue during the mandated negotiation phase.

On June 6, 2007, the parties appeared and reported that they had not settled. The Court then entered an oral ruling declaring that it had jurisdiction to adjudicate the employment dispute, granting the motion to reopen the case, and stating that it would issue a written order articulating the full rationale for its determination. This memorandum of decision constitutes that written decision.

## Discussion

Resolving this issue requires the Court to wade into the murky waters of post-closing subject matter jurisdiction. The Court looks first to the retention of jurisdiction language contained in the record of the chapter 11 case.

The text of the confirmed Amended Chapter 11 Plan, dated November 1, 2005, is essential to the Court's analysis. Article XI of the Plan, entitled "Retention of Jurisdiction," provides as follows:

> **11.1 Scope of Retention of Jurisdiction**
> Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, <u>the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:</u>
>
> * * *
>
> (q) hear and determine any matters arising under the Key Employee Protection Order, the Key Employee Retention Plan, the <u>Key Employee Severance Plan</u>, and the Discretionary Recognition Plan, including, without limitation, <u>any dispute relating to the existence of "Good Reason" under such plans</u> . . .

2

**11.2 Failure of the Bankruptcy Court to Exercise Jurisdiction**

> If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Section 11.1 of the Plan, the provisions of this Article XI shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

(doc. # 1996, pp. 33-34) (emphasis added). The Order Confirming the Joint Plan of Reorganization provides that "[t]he terms and provisions of the Plan are incorporated by reference into and are an integral part of this Confirmation Order." (doc. # 2057, p. 14). That Order also provides that the Plan and its provisions "shall be binding upon the Debtors, the Reorganized Debtors, . . . and any holder of a Claim against or Interest in the Debtors." (doc. # 2057, p. 15).

**I.    Whether the Court Has Subject Matter Jurisdiction**

Bankruptcy courts, as courts of limited jurisdiction, may exercise subject matter jurisdiction on two grounds: ancillary (sometimes called inherent) jurisdiction, and statutory jurisdiction under 28 U.S.C. § 1334. See In re Chateaugay Corp., 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996), aff'd 213 B.R. 633 (S.D.N.Y. 1997).

> The Supreme Court has held that federal courts may assert ancillary jurisdiction
>> for two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380-81 (1994) (citations omitted). The second of the two purposes is implicated here.

In In re Chateaugay Corp., the district court held that "Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant under 28 U.S.C. § 1334." 201 B.R. at 62. Cf. Local Loan Co. v. Hunt, 292 U.S. 234, 239 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled.").

The law is well-settled that bankruptcy courts retain post-confirmation jurisdiction if the chapter 11 plan provides for it. The Second Circuit has ruled that "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders." In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002). It has also ruled that "[a] bankruptcy court retains post-confirmation jurisdiction in a chapter 11

3

proceeding only to the extent provided in the plan of reorganization. . . . The bankruptcy court's post-confirmation jurisdiction therefore is defined by reference to the Plan." In re Johns-Manville Corp., 7 F.3d 32, 34 (2d Cir. 1993). In the instant case, the Plan clearly provides a broad grant of post-confirmation jurisdiction. However, the question raised here extends beyond the post-confirmation period to the post-closing period. Court rulings on this question are few, and the post-closing decisions that the Court has found address cases that were closed by a dismissal order entered following entry of a stipulation or settlement agreement; they are not bankruptcy cases closed after the entry of a confirmation order and final decree. Nevertheless, the Court finds those dismissal cases instructive and, by analogy, finds them applicable to this case even though the order that signaled the legal conclusion of this case was a confirmation order.

That federal courts may assert ancillary jurisdiction over cases that have been dismissed is clear from the Kokkonen case. There, the Supreme Court was asked to determine whether a district court had the inherent power to enforce the terms of a settlement agreement (entered into pursuant to Fed. R. Civ. P. 41) under the doctrine of ancillary jurisdiction. A unanimous Court held that the district court did not have subject matter jurisdiction because the stipulation and final order under review "did not reserve jurisdiction in the District Court to enforce the settlement agreement," 511 U.S. at 377, and the dismissal order the movant sought to enforce under ancillary jurisdiction was not imperiled by the alleged breach of the settlement agreement claimed by one of the parties, id. at 380. Most relevant to the instant issue, the Court commented that

> [t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal – either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist. That, however, was not the case here. The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.

Id. at 381. If the dismissal order had incorporated the settlement agreement or had retained jurisdiction over the settlement contract – in sum, if the critical documents reflected that the parties had agreed to such jurisdiction – the court would have had jurisdiction. Id. at 381-82. The Court enunciated the general rule that "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Id. at 382.

A number of bankruptcy courts have applied Kokkonen's holding to bankruptcy cases and proceedings to determine whether a bankruptcy court has jurisdiction to reopen a closed case to address an issue related to a settlement agreement. For example, in In re Synergistic Technologies, Inc., 213 B.R. 472 (Bankr. E.D. Va. 1997) the court observed "[a]lthough Kokkonen was not a bankruptcy case, its

4

holding is plainly applicable to bankruptcy courts, for which jurisdiction is also limited. See In re Hanks, 182 B.R. 930 (Bankr. N.D.Ga. 1995)." Synergistic Technologies, 213 B.R. at 474. Noting that the dismissal order incorporated the terms of the agreement, and the agreement covered the issue that was the impetus for the movant seeking to reopen the case, the Synergistic Technologies court exercised ancillary jurisdiction to entertain the motion as one "relating to the court's power to protect its proceedings and vindicate its authority." Id. at 474-75 (quoting Kokkonen, 511 U.S. at 380). See also In re Valdez Fisheries Development Ass'n, Inc., 439 F.3d 545, 549 (9th Cir. 2006) (ruling that because the dismissal order did not retain jurisdiction or incorporate the terms of the settlement agreement, there was no post-dismissal ancillary jurisdiction); Gulf Ins. Co. v. Glasbrenner, 343 B.R. 47, 56-57 (S.D.N.Y. 2006) (finding post-dismissal ancillary jurisdiction); In re Ionosphere Clubs Inc., 262 B.R. 604, 613 (Bankr. S.D.N.Y. 2001) (finding jurisdiction over disputes relating to claims arising after settlement and after entry of final decree where confirmation order provided that court would retain jurisdiction).

These cases indicate that if a bankruptcy case is closed, pursuant to a dismissal brought about by an agreement between the parties (settlement or otherwise), the court may have post-closing ancillary jurisdiction if the critical order at issue – in these cases, the dismissal order – incorporated the terms of the agreement or otherwise retained jurisdiction. The FiberMark case, by contrast, was not closed pursuant to a dismissal order or a settlement agreement. Rather, the case proceeded through the entire chapter 11 process – disclosure statement, chapter 11 plan, order confirming plan, substantial consummation, and final decree. Thus, the question raised is: what is the effect on the subject matter jurisdiction analysis set out in the case law if a bankruptcy case is closed by way of a final decree, after entry of a confirmation order, rather than by way of an order of dismissal? A related question is: what is the critical order to which a bankruptcy court should look when assessing whether it has ancillary jurisdiction to protect its own orders: the confirmation order or the final decree?

In the FiberMark chapter 11 case, as in other cases that have proceeded through confirmation, the final decree is a form-generated document that is quite brief. Here, as in all chapter 11 cases in this District, the final decree reads:

> THE COURT FINDS that the estate of the above named debtor has been fully administered, and the chapter 11 plan of reorganization has been substantially consummated.
>
> IT IS ORDERED that the case of the above named debtor is closed as of the date of this order.

(doc. # 2253). This order does not, and is not designed to, identify the parties' rights, memorialize the parties' understandings, or establish any jurisdictional parameters. It simply delineates on the docket that the case is closed; it represents the administrative conclusion of a case for record keeping purposes. See In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc., 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999) ("the

entry of a final decree is essentially an administrative task. . ."); In re Beechknoll Nursing Homes, Inc., 202 B.R. 260, 261 (Bankr. S.D.Ohio 1996) (observing that the final decree does not adjudicate any rights between the parties and is more of an administrative step to allow the clerk's office to dispose of the fully administered case file).

On the other hand, a confirmation order incorporates the terms of a chapter 11 plan, orders the performance of the critical promises the debtor made vis a vis its financial reorganization, fixes the rights and obligations of the debtor to each class of creditors, and articulates the essential agreements governing the relationship between the parties in interest and the reorganized debtor. It is generally regarded as the final court determination in a chapter 11 case. See 11 U.S.C. § 1141; In re Layo, 460 F.3d 289, 293-94 (2d Cir. 2006) (holding that a bankruptcy court's order confirming a plan of reorganization constitutes a final judgment with *res judicata* effect, binding the parties by its terms); In re American Preferred Prescription, Inc., 255 F.3d 87, 92 (2d Cir. 2001) ("The confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of a final judgment in an ordinary civil litigation."). Thus, for purposes of the post-confirmation subject matter jurisdiction analysis, the Court finds that the confirmation order, not the final decree, more closely parallels the dismissal order discussed in Kokkonen, its progeny, and the other ancillary jurisdiction cases cited herein.[1] If the parties in a chapter 11 case intended to have the bankruptcy court retain jurisdiction over certain post-closing disputes, they, and the court, would look to the text of the final substantive order entered in the case – the confirmation order – not the final decree, for proof of that intent. (If a chapter 11 case does not result in a confirmed plan, and is dismissed, then the key order for purposes of ascertaining post-closing jurisdiction would be the dismissal order.)

The Court therefore finds that it is appropriate to apply the reasoning of Kokkonen and In re Synergistic Technologies to the FiberMark confirmation order to determine if there is subject matter jurisdiction over Wilson's claim. The confirmation order here incorporated the terms of the chapter 11 plan (doc. # 2057, p. 14, ¶ 3). The chapter 11 plan, as quoted above, not only contained a broad retention of jurisdiction provision, but also indicated that the bankruptcy court would have jurisdiction over the specific question which instigated Wilson's motion to reopen: a dispute relating to the existence of "Good Reason" under the KESP. See doc. # 1996, p. 34. This is consistent with the general principle that bankruptcy courts "have broad authority under § 1142 to order actions required to ensure compliance with a confirmed plan." In re Lacy, 304 B.R. 439, 447 (D.Colo. 2004).

---

[1] The 1991 Advisory Committee Note to Fed. R. Bankr. P. 3022, "Final Decree in Chapter 11 Reorganization Case," states that "[t]he court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code."

6

Since the terms of the FiberMark chapter 11 plan provide for retention of jurisdiction over any dispute concerning the KESP, and chapter 11 confirmation orders are the key source for determining whether a bankruptcy court has ancillary jurisdiction over an issue once a case has closed, the Court holds that it has ancillary jurisdiction to resolve Wilson's KESP dispute.

Having found ancillary jurisdiction, the Court is not required to address the question of statutory jurisdiction pursuant to 28 U.S.C. § 1334.[2]

## II.    Exercising Discretion to Reopen the Case

Finding that it has authority to assert subject matter jurisdiction over the dispute underlying the motion to reopen does not end the Court's analysis, however. The Court must next determine whether it is appropriate to reopen the case.

The Code provides, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Second Circuit has held that decisions to reopen "invoke the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." In re Chalasani, 92 F.3d 1300, 1307 (2d Cir. 1996) (citation omitted).

Adjudication of this motion to reopen is different from garden variety motions to reopen because the Court had to first ascertain that it had subject matter jurisdiction over the dispute. Having determined that it has ancillary jurisdiction, it must decide whether it will exercise its discretion to reopen the case. See In re V. Savino Oil & Heating Co., Inc., 1992 WL 118801 at *3 (E.D.N.Y. May 21, 1992) ("A federal court's ancillary jurisdiction is to be exercised with discretion. . ."). It appears to the Court that the standard for reopening should more closely parallel the discretionary standard federal courts apply when assessing whether to exercise supplemental jurisdiction. That position was suggested in In re Porges, 44 F.3d 159 (2d Cir. 1995). In that case, the Second Circuit reviewed a bankruptcy court's determination to exercise jurisdiction under 11 U.S.C. § 349 and to issue a decision in an adversary proceeding initiated after the voluntary dismissal of a bankruptcy case. Although the Second Circuit affirmed, in the context of statutory "related to" jurisdiction, it observed with approval the district court's having "analogized the bankruptcy court's exercise of jurisdiction over the adversary proceeding to a district court's jurisdiction over pendent state claims following dismissal of all federal claims." Id. at 162. The Circuit Court held that "a court must consider four factors in determining whether to continue to exercise jurisdiction: judicial economy, convenience to the parties, fairness and comity." Id. at 163, citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).[3]

---

[2]    In that regard, however, the Court notes that it stated on the record at the June 5, 2007 hearing that it possessed both ancillary and statutory jurisdiction to reopen the case. The Court has *sua sponte* reconsidered that alternate holding of statutory jurisdiction and withdraws that part of the oral ruling.
[3]    These factors are also set out in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

Congress consolidated the judicial doctrines of ancillary and pendent jurisdiction in 1990, codifying them together at 28 U.S.C. § 1367 under "Supplemental Jurisdiction." See Jones v. Ford Motor Credit Co., 358 F.3d 205, 212 (2d Cir. 2004). The Second Circuit has recognized that the above-noted four factors are merged into the § 1367(c) analysis.[4] See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994). Because pendent and ancillary jurisdiction have been consolidated into supplemental jurisdiction, this Court deems it appropriate it to apply the four factor standard when determining whether it should exercise its discretion to reopen a case where subject matter jurisdiction is premised on ancillary jurisdiction. See Chesley v. Union Carbide Corp., 927 F.2d 60, 64 (2d Cir. 1991) ("The decision to hear an ancillary claim is discretionary, however, and turns upon 'whether the policies of 'judicial economy, convenience and fairness to litigants' are furthered by the assumption of jurisdiction.") (citations omitted).

This Court has overseen the FiberMark case from inception to final decree, and is thus intimately familiar with the issues in the case. More particularly, the Court conducted a hearing on both the KESP and the Key Employee Retention Plan, and is well-positioned to adjudicate claims related to those documents in particular, and in the context of this chapter 11 case generally. To decline to reopen the case, and thus send the employment dispute to state court, would serve no useful purpose and would waste the resources already invested by the parties and this Court. Litigating in bankruptcy court does not appear to be inconvenient to the parties, and questions of comity have not arisen because there is no extant state court proceeding. Furthermore, it appears to be eminently fair for the Court to reopen the case and assert jurisdiction over the KESP dispute. The parties clearly envisioned this Court as the venue for such disputes, memorializing that understanding in the KESP itself as well as in the Chapter 11 Plan and Confirmation Order. Moreover, the Debtors have offered no persuasive argument as to why the parties should not be bound by the terms set forth in those documents. While the Court is mindful that reopening will result in the Reorganized Debtors incurring liability for U.S. Trustee fees, this is not a compelling reason to deny reopening of the case. When the Debtors proposed a Plan that included this Court's retention of jurisdiction, they could have easily anticipated that such jurisdiction might well extend beyond the confirmation of the Plan and the closing of the case. The Debtor's very sophisticated counsel could easily have foreseen that the broad jurisdiction retention language of the KESP and Plan might be the basis for reopening the case – indeed that is precisely the purpose of such language. Based upon all of these considerations, the Court finds there is cause to reopen the case.

Even if the Court were to rely on the more general reopening standard under § 350, it would arrive at the same conclusion. Under the facts and circumstances of this case, it appears that this Court is in the best position to adjudicate the subject dispute expeditiously. Moreover, the only argument on the merits that would weigh in favor of denying the motion to reopen is the cost to the Reorganized Debtors and the

---

[4] 28 U.S.C. § 1367(c) provides factors a court should consider if it declines to exercise supplemental jurisdiction over a claim.

Court finds such costs (primarily U.S. Trustee fees) are outweighed by fundamental principles of fairness. The Court finds that reopening of the case is proper to adjudicate the Employee's claim and effectuate the agreements made in the course of the chapter 11 reorganization process.

## **Conclusion**

Based upon the foregoing analysis, the Court holds that it has ancillary jurisdiction over Wilson's employment dispute. Having found jurisdiction, the Court finds cause to exercise its discretion to reopen the FiberMark case.

This constitutes the Court's findings of fact and conclusions of law.

_____
June 14, 2007                                                                  Colleen A. Brown
Rutland, Vermont                                                       United States Bankruptcy Judge